**UNITED STATES of America**

**v.**

**TEXAS EASTERN TRANSMISSION CORP. et al.**

**Civ. A. No. 10046.**

United States District Court
W. D. Louisiana,
Shreveport Division.

Nov. 24, 1965.

**116**

Edward L. Shaheen, U. S. Atty., and Edward V. Boagni, Asst. U. S. Atty., Shreveport, La., for the government.

Elmon W. Holmes, Hargrove, Guyton, Van Hook & Ramey, Shreveport, La., Robert O. Brown and Earl P. Enos, Duncan, Okl., Vinson, Elkins, Weems & Searls, Houston, Tex., R. Briscoe King, Corpus Christi, Tex., Roy L. Beard, Stagg, Cady, Johnson & Haygood, Ben E. Coleman, Morgan, Baker, Skeels & Coleman, Shreveport, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

This action initially was instituted by the United States to foreclose two tax liens assessed on the property of the Little Giant Oil Company of Texas in the aggregate sum of $3,690.60, the claims arising under the internal revenue laws of the United States. A judgment by default was entered against Little Giant on July 22, 1965, after it failed to appear or plead. ·

The property subjected to the tax lien sought to be enforced is *a sum of money* held by Texas Eastern Transmission Corporation, representing money due Little Giant as payment for the production of oil and gas from its well located in Goliad County, Texas. By its answer, Texas Eastern responded with an interpleader, depositing the sum of $3,308.62 in the registry of the Court.[1] The other defendants—claimants in interpleader—are Jimmy Clark, d/b/a Clark's Industrial Engine Service, residing in Corpus Christi, Nueces County, Texas, a judgment creditor of Little Giant, W. R. Anderson, trustee for creditors of Little Giant, a resident of Corpus Christi, Texas, and Halliburton Company, a Delaware corporation licensed to do business in Louisiana, with a business office in Shreveport.[2]

The dispute here is as to proper priority with respect to the fund held for the credit of Little Giant, apparently one of the last remaining assets of that corporation. It arises out of a complicated series of transactions the resolution of which becomes relatively simple under the internal revenue laws of the United States.[3]

Jimmy Clark was awarded a money judgment against Little Giant on September 27, 1961, for the sum of $967.40, plus interest, which was recorded in Nueces County, September 28, 1961, and in Goliad County October 21, 1961.[4] Texas Eastern received notice by service of the judgment on it on or about October 3, 1961. W. R. Anderson was named Trustee under a trust agreement styled an "Assignment of Production" executed March 5, 1962, filed April 30, 1962, and recorded May 4, 1962, transferring all of Little Giant's production rights in trust for the benefit of certain creditors of Little Giant who held prior recorded me-

---

1. The United States filed a motion to dismiss the interpleader as to it on the ground it had not consented to such an action. Although the objection seems meritorious it has not been renewed since judgment was entered against Little Giant. In any event Texas Eastern need have no fear of multiple liability.

2. The United States has conceded that Halliburton is entitled to priority payment from the fund by reason of an assignment of production rights from Little Giant to secure an indebtedness of $801.90, plus interest, in a Deed of Trust executed September 1, 1961, and recorded in Goliad County, Texas September 8, 1961. Thus Halliburton is entitled to withdraw such funds by priority upon presentation of an appropriate order.

3. 26 U.S.C. § 6321 et seq.

4. It is not apparent upon the face of Clark's pleadings whether any attempt was made to execute his judgment against Little Giant. In its brief, the United States informs us that two writs of execution were returned 'Nulla bona.' This is, of course, immaterial to our decision here.

chanic's liens. None of the lien holders had prosecuted their claims against Little Giant to judgment, but the debts and the specific amounts thereof were admitted and acknowledged in the "Assignment of Production" of March 5, 1962.

According to his affidavit, on February 16, 1962, the District Director of Internal Revenue, R. L. Phinney, assessed against Little Giant withholding taxes, penalties and interest in the amount of $2,938.61 for the fourth quarter of 1960; notice and demand for payment was made on the same day. On March 23, 1962, he assessed the sum of $751.99 for the first quarter of 1961, notice and demand being made that day. On March 15, 1962, a notice of tax lien in the sum of $2,938.16 was filed with the County Clerk, Nueces County, Texas; on April 6, 1962, a notice of tax lien in the sum of $751.99 was filed in the same County; on April 6, 1962, a notice of tax lien in the sum of $3,690.60 was filed with the County Clerk, Goliad County, Texas. A notice of levy was served on Texas Eastern on August 13, 1963, and a final demand for payment was served August 27, 1963.

■ The law with respect to priorities between these claimants is easily stated. The priority of the federal tax lien provided by 26 U.S.C. § 6321 [5] as against liens created under state law is governed by the common law rule—"the first in time is the first in right." United States v. City of New Britain, 347 U.S. 81, 85–86, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). It is critical to the resolution of the dispute herein to determine whether the parties in fact had liens attaching to the specific property involved, and, if so, when they came into existence or became valid for the purpose of the rule.

■ The tax lien arises, according to § 6322, when the tax is assessed, but as against the specific persons mentioned in § 6323(a)—mortgagees, pledgees, purchasers and judgment creditors—it is not valid until placed of public record. As for a lien created by state law, its priority depends "on the time it attached to the property in question and became choate." United States v. City of New Britain, supra; United States v. Security Tr. & Sav. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950).

■ It is not disputed that the fund held to the credit of Little Giant was the property of that taxpayer within the meaning of § 6321 on February 16, 1962, when the tax lien for $2,938.61 attached.[6] This lien was valid, although secret, upon assessment against all persons except those stated in § 6323, above, as to the fund now held in the registry of the Court.

The non-federal claimants, Clark and Anderson, assert the superiority of their claims over that of the United States— that they hold special interests against the debtor, which, under § 6323, should be accorded priority. While each point raised will be treated herein, we feel the parties have missed the crucial issue: whether either of these claimants holds a lien against the specific property involved—a sum of money held to the

5. 26 U.S.C. § 6321: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

6. It would appear that the assessment of March 23, 1962, did not attach to the fund, as it was assigned to W. R. Anderson, Trustee, on March 5, 1962, and no longer constituted property of the taxpayer within the meaning of § 6321. See Logan Planing Mill Co. v. Fidelity & Cas. Co. of New York, 212 F.Supp. 906 (D.C.W.Va.1962) (where a contractor assigned contract proceeds to trustee so as to secure indemnitor required by surety on contractor's bond, there was no property of contractor in fund to which federal tax lien could attach); cf. United States v. R. F. Ball Const. Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510; reh. denied, 356 U.S. 934, 78 S.Ct. 770, 2 L.Ed.2d 763 (1958) (assignment to secure a future contingent indebtedness).

credit of their debtor by Texas Eastern in Caddo Parish, Louisiana. Determination of the existence of a lien upon specific property requires an examination of each party's claim.

■ Jimmy Clark, d/b/a Clark's Industrial Engine Service, held a judgment against Little Giant, which under Texas law, when recorded in any county where the debtor owned realty, became a lien attaching to any such interest. Vernon's Texas Civil Statutes, Article 5449. It is immaterial whether the judgment debtor's interest appears of record—whatever interest in "real estate" he actually owns is bound by the lien. See Donley v. Youngstown Sheet & Tube Co., 328 S.W.2d 192 (Tex.Civ.App.1959), and cases cited therein. Since an oil and gas leasehold is "real estate," Clark's judgment lien attached to Little Giant's interest in Goliad County. But oil and gas, once it is produced, loses its character as real property and becomes personalty.[7] A judgment lien is not, by Article 5449, made a lien on personalty. It thus seems well settled that in Texas the lien acquired by recording a judgment cannot attach to oil and gas after severance, or to proceeds resulting from its sale.[8]

■ Since it must be concluded that Clark had no lien on the proceeds here in dispute, it is obvious that his claim as a "judgment creditor" under the provisions of § 6323 is misplaced.[9]

■ The claim of Anderson, as transferee of Little Giant of its production rights under the March 5, 1962, agreement, is as lacking in merit as it is complex. Briefly stated, Anderson asserts: (1) that the agreement of March 5th was absolute and effective without recordation and was executed prior to the filing of the tax liens sometime in April, which filing by the United States was necessary as to him because. (2) he was within the exception of § 6323—specifically that he was a "purchaser"; and (3) that the agreement of March 5th setting forth (a) the identity of the lienors, (b) the property subject to their previously recorded mechanic's liens, and (c) the amount thereof, had the effect of perfecting and making choate these liens within the rationale of the cases construing priorities between tax liens and creditor's liens.

(4) The trustee calls on equitable principles asserting that should the United States succeed, it would be unjustly enriched at the expense of those persons who were actively engaged in the drilling and maintenance of the well, and that such would be a deprivation of property without due process of law. (5) Lastly, he contends the trustee should prime Clark, who is a mere judgment creditor of the assignor, Little Giant, holding a money judgment ineffective against this particular fund.[10]

---

7. Phillips Petroleum Co. v. Mecom, 375 S.W.2d 335 (Tex.Civ.App.1964) ; Tirado v. Tirado, 357 S.W.2d 468 (Tex.Civ.App. 1962) ; Lone Star Gas Co. v. Murchison, 353 S.W.2d 870, 94 A.L.R.2d 529 (Tex. Civ.App.1962).

8. Donley v. Youngstown Sheet & Tube Co., 328 S.W.2d 192, 197 (Tex.Civ.App.1959) : "We find no authority for the holding that appellee's judgment liens can be enforced against the money paid into court by Sohio. Said lien holders did not sue for damages or conversion. There was no garnishment. Their right to said money depends solely upon their judgment liens. The statute that created them provides only that abstracts of judgments shall constitute liens on 'real estate'. Such liens do not attach to personal proper-

ty." To the same effect see Onyx Refining Co. v. Evans Production Corp., 182 F. Supp. 253 (N.D.Tex.1959).

9. Fore v. United States, 339 F.2d 70 (5 Cir. 1965) (where a federal tax lien was given priority over a prior recorded personal judgment as the latter under Texas law did not constitute a lien on the taxpayer's personal property and which had not been levied upon at the time of filing of the tax lien). See also Beeghly v. Wilson, 152 F.Supp. 726 (N.D.Iowa 1957) ; Miller v. Bank of America, 166 F.2d 415 (9 Cir. 1948).

10. As to priority between Clark and Anderson we intimate no opinion since the superior claims of Halliburton and the tax lien of February 16, 1962, deplete the fund here interpleaded.

The fallacy of Anderson's first argument is its obvious disregard of § 6322, providing attachment of the tax lien of $2,938.61 upon assessment February 16, 1962. His position would be well taken, however, if he were in fact a "purchaser" under § 6323, the substance of his second argument. A purchaser within the meaning of § 6323 is "a person who, for a valuable present consideration, acquires property or an interest in property," [11] in the manner of vendor and vendee.[12] Anderson asserts the consideration in the assignment to him was his promise to pay the debts of Little Giant. In actuality the consideration for the assignment was the promise of a fee payable to the Trustee for his services as collecting and disbursing agent.

In the case of In re Juno, 237 F.Supp. 203 (S.D.Calif.1964), an assignee, under an assignment for the benefit of creditors, attempted to characterize himself as a "purchaser." The Court was terse: "The assignee was not a purchaser. A purchaser is one who acquires title for a valuable consideration in the manner of a vendor and vendee." Although Anderson attempts to distinguish this case, we feel it is indicative of the correct rule, and hold that the Assignment of Production here was not an acquisition for a present valuable consideration in the quality of vendor and vendee.

Implicit in the trustee's third argument is the premise that he has a lien upon the fund capable of being perfected or made choate. We believe this premise to be fallacious in that the assignment made him the holder of legal title to the fund, his rights of ownership being equal to those of Little Giant. Anderson has no special right to the proceeds of production higher than his assignor which could constitute a lien upon them capable of being ranked with other liens.[13]

Anderson's contentions of unjust enrichment and unconstitutionality are without merit. The tax lien procedure and priority provisions of the internal revenue laws have long been upheld as within the constitutional power of Congress to "lay and collect taxes." See Glass City Bank of Jeanette, Pa. v. United States, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945); State of Michigan v. United States, 317 U.S. 338, 63 S.Ct. 302, 87 L.Ed. 312 (1943); Knox v. Great West Life Assur. Co., 212 F.2d 784 (6 Cir. 1954).

The priorities thus established are: first, Halliburton Company, under its assignment of September 1, 1961; second, the United States under its tax assessment of February 16, 1962. No other priorities are established in that the fund held in the registry of the Court is fully depleted. These parties may withdraw the funds in the order of the above priority upon presentation of an appropriate decree.

---

11. Fed.Tax Reg. 301.6323—1(a) (2) (i) (a).

12. See United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (1955), holding that a landlord who has a lien for rent arrears created by state law is not a "purchaser."

13. The trustee's argument also suggests that the mechanic's liens accorded by Texas law to the creditors he represents should receive some individual consideration. It is well settled, however, that the mechanic's liens held by these parties under Vernon's Texas Civil Statutes, Arts. 5473–5479 (1958), attach only to the leasehold and its appurtenances and not to oil and gas produced or its proceeds. Wilkins v. Fecht, 356 S.W.2d 855 (Tex. Civ.App.1962) error refused; Crowley v. Adams Bros. & Prince, 262 S.W. 883 (Tex.Civ.App.1924). See also First Nat'l Bank of Lubbock v. Jenkins, 350 S.W.2d 52 (Tex.Civ.App.1961), and cases cited therein.