O & G CARRIERS, INC., Appellant,

v.

SMITH ENERGY 1986–
A PARTNERSHIP,
Appellee.

No. 01–91–01078–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 27, 1992.

Henri-Ann Nortman, John Eckel, Richard Crowther, Houston, for appellant.

James L. Ware, Galveston, for appellee.

Before DUGGAN, MIRABAL and WILSON, JJ.

OPINION

MIRABAL, Justice.

This is an appeal from an interlocutory order [1] granting the application of appellee, Smith Energy 1986–A Partnership (Smith), for the appointment of a limited receiver of

---

1. Brought under TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(1) (Vernon 1992).

the proceeds of oil and gas leases in Galveston County, Texas. We affirm.

Smith and appellant, O & G Carriers, Inc. (O & G), are co-owners of the working interest in certain oil and gas properties. Smith owns a 68% working interest in the lease and O & G owns a 32% working interest.

On May 12, 1986, as "non-operators," Smith and O & G entered into an operating agreement (sometimes referred to as "the agreement") with a third party, Luck Petroleum Corporation (Luck), the "operator." Under article VII A of the agreement, each party was to be liable for its proportionate share of the costs of development of the lease. Article VII C provided that the operator would pay expenses in the operation of the lease and charge the parties with their respective proportionate shares on the expense basis provided in the accounting procedure attached to the agreement as exhibit C. Exhibit C, entitled "Accounting Procedure Joint Operations," provided in paragraph 3 that each non-operator should pay its proportion of all bills within 15 days after the billing was issued by the operator. Under paragraph 4 of exhibit C, non-operators could take written exception to the operator's bills and make a claim on the operator for adjustment.

Attached to the agreement as article XV was an addendum, under which a New York accounting firm was designated to act as the collecting and disbursing agent for the parties to receive all income from production, remit to the operator the amounts due it under the agreement, and reimburse the remaining cash receipts to the working interest owners. Apparently, this provision was never implemented. Instead, Smith and O & G, as non-operators, received the revenue from the sale of the oil and gas directly from their purchasers and were then billed by the operator for expenses.

Smith succeeded Luck as operator under the terms of the agreement, but this did not affect the relation of Smith and O & G as non-operators in their respective percentages under the agreement.

O & G and Smith have been involved in ongoing disputes regarding Smith's actions in the operation of the leases, the propriety of certain of Smith's charges and adjustments to the joint accounts, and O & G's refusal to pay what it believes are unauthorized and improper expenses charged by Smith. Smith filed the Galveston County suit to recover alleged unpaid amounts owed by O & G for the operation of the lease. O & G has denied that it owes any expenses and has counterclaimed against Smith for breach of contract, breach of fiduciary duty, fraud in the sale of real estate, violations of the Deceptive Trade Practices Act, and common law fraud.

Smith filed an unsworn "Motion for Interim Relief," requesting that the trial court appoint an "escrow agent" to receive all revenues and pay expenses as submitted by the operator, subject to an audit to be conducted by an auditor agreed to by both parties. The motion proposed that if the parties could not agree on the auditor, (1) each party retain its own auditor and the two auditors attempt to reconcile the differences; and (2) failing to do so, a special master be appointed to resolve any dispute between the two auditors. The motion then requested that a mediator be appointed to use the auditor(s)' report as a basis for resolving the dispute, and that if the mediator was unsuccessful, the case be preferentially set for trial.

The trial court held an evidentiary hearing on the motion on August 23, 1991. The trial court recognized that Smith's proposed "escrow agent" resembled a "receiver," as did O & G's attorney. Smith's attorney initially resisted the label "receiver." The court heard testimony from Smith's expert witness, Harold Buck, a joint interest auditor who reviewed the operating agreement in question and testified that, under the agreement, if a non-operator received a billing he believed to be in error, he would be in default if he withheld payment of the invoice.

O & G called Tina Williams, a CPA, who testified that she had reviewed the joint interest billings from 1989 through 1990, as well as a few for 1991. Based on that

review, she found administrative costs that Smith, the operator, was passing through to O & G which, according to the operating agreement, were supposed to be included in the overhead flat rate Smith was also charging. She testified there are times when a non-operator will withhold payment on disputed charges.

On cross-examination, Williams acknowledged that under article VII C of the agreement, the non-operator did not have the right to withhold payment.

During the hearing, Smith first expressly disavowed any interest in the appointment of a receiver, but indicated it might consider a "limited receiver." O & G continued to object to any type of extraordinary relief because there were no pleadings or evidence to justify it. At the close of the hearing, the court announced that it would consider appointing a receiver.

After the August 23 hearing, on that same day, Smith filed a pleading, "Supplemental Memorandum In Support of Motion For Interim Relief And For Preferential Trial Setting (Request for a Limited Receivership)," requesting a limited receiver with the power to receive production proceeds, pay operation expenses, and distribute the balance to the working interest owners. The pleading invoked TEX.CIV. PRAC. & REM.CODE ANN. § 64.001(a)(3) (Vernon 1986), and alleged a "probable interest" in the leases and revenue in question as well as a danger of loss, removal or injury to that property. Smith's pleading was not sworn or supported by attached affidavits. However, as supporting evidence, the pleading referred to (1) the agreement, (2) the testimony of Harold Buck, and (3) the affidavits of Howard Smith and Monroe Cutler. These affidavits, which are not in the appellate record, were attached to an unsuccessful motion for summary judgment Smith filed before it filed the motion for interim relief. In addition to requesting the limited receivership, Smith's supplemental motion prayed the court to order the procedure requested in Smith's original motion for interim relief, e.g., audit, master, mediator, preferential trial setting.

On August 28, 1991, O & G filed a response opposing Smith's request for a limited receiver. The response asserted, among other things, that Smith had not met the requirements of section 64.001 because it had not shown that it had a probable right to recovery of the interest or fund in question, or that the fund or interest was in danger of being lost, removed, or materially injured. O & G did not assert another hearing was necessary on Smith's request for a limited receiver, nor did O & G complain that Smith was not entitled to the appointment of a limited receiver because its pleadings did not request a receiver *before* the August 23 hearing.

On August 29, 1991, the trial court noted on its docket sheet, "Motion for Interim Relief granted per order to be filed."

On September 13, 1991, O & G filed "Objections to Plaintiff's Proposed Order Appointing Receiver." The objections dealt with such items as O & G's concerns over the terms of the order as they related to the gas revenues, the timing of the payment of the revenues to the receiver, retention of its contract right to consent or dissent to the conduct of a workover, the handling of funds relative to invoice items to which O & G excepted, and liability of the parties for the receiver's expenses. O & G did not object that Smith's pleadings were unsworn, or complain of the lack of a hearing on Smith's request for a receiver, or the order's failure to require an applicant's bond.

The court's docket sheet shows an entry on 9–30–91, "Hearing on Order to enter set for Oct. 3, 1991 at 2:00 PM. HGD/ami."

Smith asserts in its brief that "A *second* hearing on the receivership proposal was held on October 3, 1991," but a record of that hearing is not before this Court. In its original brief, O & G makes no reference to this second hearing. In its reply brief, O & G says of the second hearing, "It is disingenuous for the Appellee [Smith] to claim that the court held a 'second' hearing on the receivership issue on October 3, 1991, when the court had already informed the parties on August 29, 1991, that the Motion for Interim Relief had been grant-

ed. In fact, the court's docket entry reflects that the October 3 hearing was to be a 'hearing on Order to enter.' "

On October 8, 1991, the Court signed the "Order Appointing Temporary, Limited Receiver." The order provides that the receiver receive the revenues from the oil and gas purchasers, and pay all bills he deems payable under the operating agreement based on the monthly operating statements submitted by Smith. It provides that within 10 days of the date of the monthly statement, O & G shall present to the receiver any objections it has to Smith's submitted expenses. The receiver is to determine if O & G's objections are justified under the terms of the operating agreement; if so, he is not to pay the expense. If he is uncertain, he is to deposit O & G's share of the expense in an interest bearing savings account; if he feels the objections are unjustified under the operating agreement, he is to pay the expenses as submitted. The receiver is then to pay the non-operators their respective percentages of the balance of revenue after expenses. The order provides that the receiver's decisions and interpretations will not be binding on the court or a jury, and further provides for an audit procedure similar to the one requested in Smith's motion for interim relief. If the case is not settled before then, the order preferentially sets the case for trial on March 3, 1992. The order contains no requirement that Smith, the applicant, post a bond as required by TEX.R.CIV.P. 695a.

On October 28, 1991, O & G unsuccessfully applied to the trial court for a supersedeas bond to suspend execution of the order appointing the temporary limited receiver. On the same day, O & G perfected its appeal of the trial court's order to this Court by filing its appeal bond.

On December 12, 1991, this Court granted O & G's motion for temporary orders, staying the trial court's order pending our review of the order on the merits. On December 17, 1991, Smith filed with the trial court a rule 695a bond, binding Smith and its surety to pay O & G $24,000 for all damages and costs in the suit, if it should

be decided that the temporary limited receiver was wrongfully appointed.

On December 18, 1991, Smith filed its motion to set aside our temporary order on the grounds that O & G had failed to object at the trial court level to the trial court's failure to require the filing of an applicant's bond and on the ground that an applicant's bond was subsequently filed. We denied Smith's motion and set the appeal for submission and oral argument on January 9, 1992. On January 16, 1992, we withdrew our stay order.

In its first point of error, O & G asserts the trial court abused its discretion in appointing a receiver because Smith filed no verified pleadings seeking the relief.

■ The appointment of a receiver, either as authorized by statute or usages of equity, will not be disturbed on appeal unless the record reveals a clear abuse of discretion. *B & W Cattle Co. v. First Nat'l Bank*, 692 S.W.2d 946, 951 (Tex. App.—Amarillo 1985, no writ); *Greater Fort Worth v. Mims*, 574 S.W.2d 870, 872 (Tex.Civ.App.—Fort Worth 1978, writ dism'd). The question is determined not by the substitution of the appellate court's judgment for that of the trial court, but by whether the trial court's decision was either arbitrary or unreasonable. *B & W Cattle Co.*, 692 S.W.2d at 951.

■ Section 64.001 of the Texas Civil Practice and Remedies Code (Vernon 1986) sets forth the circumstances under which the remedy of a statutory receivership will be available. The section under which Smith sought the receivership was 64.-001(a)(3) and (b):

(a) A court of competent jurisdiction may appoint a receiver: ...

(3) in an action between partners or others jointly owning or interested in any property or fund....

(b) The party (applying for a receiver) must have a probable interest in or right to the property or fund, and the property or fund must be in danger of being lost, removed, or materially injured.

The predecessor statute to section 64.001 was TEX.REV.CIV.STAT.ANN. art. 2293 (Vernon 1971). The Amarillo Court of Appeals in *B & W Cattle Co.*, held that the statute requires a sworn written application only for an ex parte appointment of a receiver. 692 S.W.2d 946 at 951 (Tex.App.—Amarillo 1985, no writ), citing *Hunt v. State*, 48 S.W.2d 466, 469 (Tex.Civ.App.—Austin 1932, no writ). In our case, the application was not for an ex parte appointment. The court had heard sworn testimony from both Smith and O & G relative to Smith's motion for the appointment of an escrow agent. After the court made known it intended to grant Smith's request for a temporary, limited receiver, it scheduled a hearing on the entry of the order. If O & G had an objection to the lack of sworn pleadings or evidence to support the appointment of a receiver, it could have had it heard at this hearing. Because there was no ex parte application for a receiver, we hold under the authority of *B & W Cattle Co.* and *Hunt* that the trial court did not abuse its discretion in appointing the receiver, even though Smith did not file verified pleadings. *See also Sampson v. Scott*, 318 S.W.2d 22, 25 (Tex.Civ.App.—Fort Worth 1958, writ ref'd n.r.e.) (in dicta, the court agreed the trial court, in ruling on an unsworn application for a receivership, could consider evidence previously heard in the trial on the merits). We overrule appellant's first point of error.

In its second point of error, O & G asserts the trial court abused its discretion in appointing a receiver without notice or hearing on Smith's request for a receivership.

█ As noted in our discussion under point of error one, the August 23 hearing, of which the parties had notice, and at which they both appeared and presented evidence, dealt with the issue of a court-appointed, outside, third party to receive income from the lease and pay expenses. The fact that the name "escrow agent"

instead of "receiver" was used to refer to the person proposed to act in that capacity is not of substantial significance. Although the supplemental pleading requested a "temporary limited receiver" instead of an "escrow agent," the record shows that the relief requested in the supplemental pleading was the same as that requested in the original motion for interim relief. Further, the relief requested by Smith in both its original and supplemental pleadings, and the relief ultimately granted by the court, was conceptually similar to the procedure O & G had originally agreed to, as provided for in section F. of article XV, the addendum to the operating agreement. It provided for an outside, third party to collect the revenues, pay the expenses of the operation of the lease to the operator, and disburse the remaining cash receipts to the working interest owners.

█ Smith filed its supplemental pleading requesting a limited receiver on August 23, 1991, and O & G filed its opposition on August 28, 1991. O & G additionally filed an objection to Smith's proposed order appointing a receiver on September 13, 1991. In neither of these two responsive pleadings did O & G advise the trial court of its complaint, raised on appeal, that Smith's pleadings did not provide timely notice that Smith was seeking a limited receivership, or that once Smith amended its pleadings to seek a limited receivership, another evidentiary hearing was required before relief could properly be granted. O & G had ample opportunity to bring these complaints to the attention of the trial court, yet it failed to do so. We hold O & G has waived the right to complain about these matters. *See Kralik v. Martin*, 659 S.W.2d 136, 138 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).[2]

We overrule O & G's second point of error.

In its third point of error, O & G asserts the trial court abused its discretion in ap-

2. Additionally, we note that one court has held that a *written* application for appointment of a receiver is not always necessary to validate the appointment. *B & W Cattle Co.*, 692 S.W.2d at 951. Under *B & W Cattle Co.*, Smith's *oral* statements at the end of the August 23 hearing could be construed as a sufficient application to support the appointment of the statutory, limited receiver.

pointing a receiver because there was no evidence, or in the alternative, insufficient evidence to establish that sufficient legal or equitable grounds existed for the appointment of a receiver, in that there was no evidence or insufficient evidence that the property or fund in question was in danger of being lost, removed, or materially injured.

■ Evidence introduced at the August 23, 1991, hearing indicated O & G did not have the right to withhold payments when it was invoiced by Smith, yet it did often withhold payments in violation of the operating agreement. As a result, Smith would often pay part of the expenses O & G had been invoiced for. Thus, the evidence showed Smith's interest in the revenue from the leases was in danger of being lost or materially injured by Smith having to pay not only the expenses Smith had been billed for, but also many of the expenses O & G had been billed for.[3] In *Consolidated Petroleum Co. v. Austin*, a case with similar facts, the order appointing a statutory receiver was affirmed. 283 S.W. 879, 880 (Tex.Civ.App.—Eastland 1926, no writ).

Based on the record before us, we cannot say the trial court abused its discretion. We overrule point of error three.

In its fourth point of error, O & G asserts the trial court abused its discretion in appointing a receiver because the evidence showed that Smith had unclean hands, and was therefore not entitled to equitable relief. O & G points to evidence introduced at the August 23 hearing to the effect that Smith charged O & G for items not authorized under the agreements.

The trial court, as the trier of fact, could believe or disbelieve O & G's witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). We overrule point of error four.

■ In its fifth point of error, O & G asserts the trial court abused its discretion in appointing a receiver without requiring the applicant to post a bond, in violation of Tex.R.Civ.P. 695a.

A line of cases holds that the failure of an applicant to file a bond requires reversal of an order granting receivership. *See Rubin v. Gilmore*, 561 S.W.2d 231, 234 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ); *Continental Homes v. Hilltown Property Owners*, 529 S.W.2d 293, 295 (Tex.Civ.App.—Fort Worth 1975, no writ); *O'Connor v. O'Connor*, 320 S.W.2d 384 (Tex.Civ.App.—Dallas 1959, writ ref'd n.r.e.). The present case is distinguishable from those cases because after O & G's appeal of the receivership order, Smith did file an applicant's bond. Accordingly, O & G's fifth point of error is now moot, and is overruled.

We affirm the trial court's order appointing the temporary, limited receiver.

WILSON, J., dissenting.

WILSON, Justice, dissenting.

Suppose the existence of two business entities, A & B, that by agreement pooled resources to seek a profit together in a specific venture. A & B further contracted between themselves to share the responsibilities and expenses of their enterprise in particular proportions. Assume further that the joint undertaking was receiving a constant income stream provided by a third company, C, which purchased the product of the venture by paying A & B separately and not into a common fund.

A & B then found themselves in disagreement over what the contract meant, specifically with regard to what expenses were to be borne by each party. Each sued the other in a Texas district court claiming,

---

**3.** We note that we do not have before us all the information the trial court had before it when it signed the order. In its supplemental pleading for the temporary limited receiver, Smith referenced two affidavits attached to a previously filed motion for summary judgment. Additionally, on October 3, 1991, before signing the order appointing the receiver, the trial court held a hearing pertaining to the entry of that order. Neither the affidavits nor a record of the proceedings at the October 3 hearing are before this Court. We do not decide whether the absence of these record items on appeal requires us to presume they contained evidence to support the trial court's order. Rather, we find the evidence introduced at the August 23, 1991 hearing supports the order.

in essence, that each was getting less than the benefit due from the bargain. Finally, as the joint expenses of the venture are being paid, albeit under protest, no bill collectors are knocking on the door, and the income stream from C continues unabated.

Given this set of assumptions, is it a proper utilization of the harsh remedy[1] of receivership under Texas law to use a receivership to apportion expenses between A & B when the constancy of the income stream remains secure despite the dispute? The majority says that it is, and from that conclusion and the reasons supporting it, I respectfully dissent.

Under the assumptions as outlined, and the facts of this case, a receivership would be proper upon a showing by a movant, whether A or B, that the underlying dispute between the parties was of such a magnitude that the common right of both parties to receive income was in danger of being lost, removed, or materially injured either by their own action or from third parties. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 64.001(b) (Vernon 1986). There is no such showing in this case.

For two basic reasons, no evidence and no notice, I respectfully but fundamentally disagree with the majority's countenance of this unique receivership. By permitting this receivership to stand, the majority, in my view, belies the very nature of such an "extraordinary remedy" as understood in Texas jurisprudence.

First, no evidence exists in the record that supports a finding that the jointly owned property or fund of the parties, however defined, was "in danger of being lost, removed, or materially injured" as required by the statute.

Second, and compounding the injustice, appellant was provided with no actual notice whatsoever that appellee sought a statutory receivership, or for that matter, a receivership of any kind, before the hearing was conducted that ultimately became the only evidentiary basis used by the trial judge to justify the receivership's imposition.

Given the accelerated aspects of this appeal, I will only address points of error two and three, relative to notice and the sufficiency of the evidence. My not addressing the remaining points of error is not to be understood as agreeing or disagreeing with the majority's holding.

INTRODUCTION:

On August 23, 1991, appellant appeared by counsel before the 122nd District Court of Galveston County to answer a motion by appellee styled "Plaintiff's Motion for Interim Relief and for Preferential Trial Setting." It is without dispute that the word "receivership" appears nowhere in the motion.[2]

After rather lengthy opening statements by both sides, the court began to receive evidence. No pleading, or any other document filed previous to the hearing, had mentioned or prayed for imposition of a receivership. Further, there was no oral request for a receivership voiced before, or during, the hearing. Indeed, appellee, in a colloquy with the judge, explicitly disavowed its application.

After the opening statements and discussion of possible remedies, appellee (plaintiff below) placed some five documents[3] in evidence without objection and called Harold James Buck by video deposition as its only witness.

---

1. *See, e.g., Jones v. Strayhorn*, 159 Tex. 421, 321 S.W.2d 290, 294 (1959). In this case, solely because of judicial intervention into the basic dispute between the litigants, the income "pie" available to the parties is now smaller. There is less total money for the parties to share because of the expenses of the receivership mandated by the district court, and affirmed by the majority. Because of the added expense, the case becomes correspondingly more difficult to settle.

2. It is also unchallenged that the word "receivership" does not appear in plaintiff's (appellee's) second amended original petition filed August 12, 1991, or in any other pleading or document of any nature filed before August 23, 1991, and contained in the record before us.

3. These documents were the basic agreements between the parties, plus an example of a monthly billing statement. They were not the summary judgment affidavits referenced by appellee in its memorandum.

At the conclusion of appellee's evidence, appellant proceeded to call Tina Williams as its only witness. After direct and cross-examination of Williams, appellant stated, "that's all the testimony that we have to present." Appellee then stated, "we have no further evidence." Both sides having opened and closed the evidence on the motion presented, the court invited arguments. It was during this phase of the proceeding that the discussion returned to the concept of receivership. Only after both sides rested from their presentation of the evidence, and after prompting by the judge, did appellee, in final argument, make the first tentative remarks to the judge that a receivership might be what they wanted after all.

Subsequent to the hearing, on the same day, appellee filed a document styled, "Supplemental Memorandum in Support of Motion for Interim Relief and for Preferential Trial Setting (Request for Limited Receivership)." This document was the first writing that requested a receiver.[4] The Supplemental Memorandum makes the following statement relative to the evidence necessary to satisfy the statutory burden:

> Evidence has also been introduced that the property is in danger of being, lost, removed, or materially injured, because plaintiff (appellee here) has been placed in a position of having to pay a disproportionate share of the costs incurred in operating the leases, while the defendant has been receiving all of the revenues attributable to its interest without paying its share of costs. These specific allegations are supported by the testimony of Harold J. Buck, as well as the affidavits of Howard Smith and Monroe Cutler, attached to Plaintiff's Motion for Partial Summary Judgment.

On August 28, 1991, appellant filed a response opposing the appointment of a temporary receiver and suggested appellee had failed to meet its burden of proof under section 64.001. On August 29, 1991, the trial court noted on its docket sheet that the relief requested was granted, "per order to be filed." After August 29, 1991, appellee filed a proposed order, appellant filed objections to the order, and the trial court set a hearing for entry of the order on October 3, 1991.

On October 8, 1991, the trial court signed an order styled, "Order Appointing Temporary, Limited Receiver," which reads in part as follows:

> On the 23rd day of August, 1991, this matter came on for hearing before the Court on the application of Smith Energy 1986–A Partnership, Plaintiff, for the appointment of a receiver for the oil and gas proceeds derived from the operation of.... Both parties appeared through their respective counsel. The Court, having read the pleadings, examined the evidence presented and heard the argument of counsel, is of the opinion that a temporary limited receiver should be appointed, as requested by the Plaintiff.

The supplemental memorandum filed by appellee also mentioned the agreements between the parties which, unlike the summary judgment affidavits, were in evidence at the hearing.

## POINT OF ERROR THREE: NO EVIDENCE

In response to appellant's point of error three, the majority offers the following, directed to the evidence considered by the trial judge:

> Evidence introduced at the August 23, 1991, hearing indicated O & G (appellant) did not have the right to withhold payments when it was invoiced by Smith, (appellee), yet it did often withhold payments in violation of the operating agreement. As a result, Smith would often pay part of the expenses O & G had been invoiced for. Thus, the evidence showed **Smith's interest in the revenue** from the leases was in danger of being lost or materially injured by Smith having to pay not only the expenses Smith had

---

**4.** Appellee asked the court to appoint a receiver under a specific statute. Tex.Civ.Prac. & Rem.Code Ann. § 64.001(a)(3) & (b) (Vernon 1986). Although appellee argued the equities of appointing a receiver, there was no request for a receiver under the general equitable principles of Tex. Civ.Prac. & Rem.Code Ann. § 64.001(a)(6) (Vernon 1986).

been billed for, but also many of the expenses O & G had been billed for. (Emphasis added.)

The majority finds evidence that appellant's conduct caused a loss to "Smith's interest in the revenue," and decides that finding is equivalent to a finding of loss to a common fund. I respectfully suggest an individual interest and a common interest are not the same. Lien rights and ownership rights are different concepts. Only the common interest of the parties is put within the reach of receivership within this particular statute.

I do not believe the evidence outlined by the majority is relevant to the statutory findings necessary for the imposition of a receivership under section 64.001(a)(3) & (b). First, the right to receive income from the company buying the production from the well is jointly owned. It is undisputed by the parties, and unchallenged by the majority, that the gross proceeds from the production are paid directly to the two parties as separate entities, and not into some common fund. As the money is paid directly to each party in a gross amount attributable to their respective share, there is no joint ownership of the money after it is divided.

The majority emphasizes the pertinent provisions of the original contract in justifying its holding. In fact, the parties had agreed to a procedure to pool revenues and pay expenses in a process "conceptually similar" to the receivership ultimately imposed. However, the majority recognizes in its own opinion that, "Apparently this provision was never implemented." The receivership brings into being a course of dealing between the parties that has not existed ever in their relationship. The receivership does not return the parties to any preexisting condition.

Second, the majority makes no reference to appellee's evidentiary burden of proving probable interest to the property or fund as required by the statute. If one assumes appellee has some joint ownership of appellant's gross proceeds, or vice versa, as opposed to the lien rights pled and sued upon, what evidence is there in the record that

demonstrates appellee's probable right to any of appellant's funds? The primary law suit will not be decided on the basis of whether appellant has the right to withhold payment under the contract, but the legitimacy of the billed charges themselves. A probable right to the funds can only be answered by reference to the basic differences between the parties. Of what value will a receivership have been in this case, if a jury ultimately determines that appellant is correct in its assertion that appellee has been overcharging on the expenses? There is no evidence in the record before us about which party might prevail on the merits. Under the circumstances of this case, and without evidence as to this basic question, the receivership is not proper.

Finally, and most important, there is no evidence in the record that the joint property of the parties, however defined, is in danger of being lost, removed, or materially injured. Appellee argued that both sides were making money, and will continue to have income in excess of expenditures into the future. One remedy appellee seeks at trial, as outlined in the pleadings, is the imposition of a lien on the future income stream due to appellant. There was no evidence from anyone of a wolf at the door today, or any discernible tomorrow, ready to huff and puff and blow the rig down. The statutory burden of appellee was not met.

I would grant appellant's point of error three as there is no evidence in the record that the joint property of the parties is in actual present "danger of being lost, removed, or materially injured" as required by law. *Kneisley v. Intertex, Inc.*, 797 S.W.2d 343, 346 (Tex.App.—Houston [14th Dist.] 1990, no writ); *Hughes v. Marshall Nat'l Bank*, 538 S.W.2d 820, 824 (Tex.Civ. App.—Tyler 1976, writ dism'd w.o.j.).

The majority cites *Consolidated Petroleum Co. v. Austin*, 283 S.W. 879 (Tex.Civ. App.—Eastland 1926, no writ), as a case with "similar facts." In that case, certain tax liens had been filed against the property, and the alleged wrongdoer was not paying taxes or expenses, and was removing oil from the leasehold to outside the state.

The movants for the receivership in *Consolidated* represented about 30 percent of the interest, and the alleged wrongdoers 70 percent, virtually opposite of the record before us. In the case before us, the appellant is not paying some expenses to the operating interest.

In deciding *Consolidated*, the Honorable Chief Justice Pannill made the following statement:

> The only thing that tenants in common owned was the oil and the right to take that from under the ground. When the oil was exhausted, the value of the leasehold would cease. If appellant was permitted indefinitely to withdraw its part of the oil without paying its pro rata of the operation cost and paying its part of the taxes, which from the record was assessed against the parties jointly, and against all their interest, there was a great probability that the value of the property would reach the point where all of appellees' part of the property could be taken by the state and the other creditors for the taxes due and the cost of operation due by appellant.

283 S.W. at 880.

In the case before us, there is no evidence when the income stream would be exhausted, and no evidence that any third party is owed money or is asserting a lien, much less having recorded one, against the common property. In fact, appellee argued before the judge that both parties expected to make money into the future. The *Consolidated Petroleum Co.* opinion offers no reason why the appellant therein is not paying, whereas in the instant case, the partial nonpayment is being made under color of right. The underlying suit in *Consolidated* asked for an appointment of a receiver from the beginning while in this case, appellee voted himself into his present situation, and operated for two years under the burden appellee only now attempts to discharge through the receivership.

POINT OF ERROR TWO: NO NOTICE

Relative to the issue of notice, the following facts are undisputed from the record:

(1) The trial judge heard a motion on August 23, 1991, predicated upon a number of legal theories contained in appellee's pleadings;

(2) The same theories were outlined to the trial judge by appellee's counsel in opening statement;

(3) A receivership was not pled prior to the August 23, hearing;

(4) The evidence was opened and closed by both parties on the pleadings as they existed;

(5) Appellant objected both before and after the hearing to the lack of verified pleadings; and

(6) A document was filed (on August 23, 1991) after the evidence closed that for the first time suggested relief be granted in the form of a receivership, a means specifically disavowed by its proponent before, and for a time, even after the hearing.

The record reveals the following exchanges took place during the opening statement for appellee:

MR. WARE (FOR APPELLEE): We're here on behalf of Smith Energy 1986 A Partnership filing a Motion which we have styled for Interim Relief. It asks the Court to consider and grant our Motion **to appoint an escrow agent** for the pendency of this case, which would be responsible for receiving revenues from....

The Motion we have filed has as its basis the Texas Rules of Civil Procedure 171, Master in Chancery, and Rule 172 on Audit, also, Section 21.001 of the Government Code, the inherent powers and duties of the courts and Article 5, Section A of the Texas Constitution.

THE COURT: Let me ask you something. You're calling (the person you want) an escrow agent. **Isn't that really what you'd call a receiver?**

MR. WARE (FOR APPELLEE): **No, your Honor.** The case law in Texas contemplates both masters, auditors, and receivers. What we are proposing is that the parties be left in their current positions as having ownership and control of the oil lease, and that they are in

a position where they continue to receive net income. And there always has been net income.

....

MS. NORTMAN: (FOR APPELLANT): Let me just run through briefly what our general position is regarding this interim relief that's being sought by the Plaintiff. First it's our position that this interim relief, or what they're calling interim relief, really is—constitutes a temporary injunction.... So our first objection is to the procedure, the method of going about seeking this relief in the first place.

....

I've never seen any case in which a master in chancery was appointed for the purposes of receiving income and making disbursements to parties. As the Court aptly pointed out at the beginning of this hearing, that's much more like the concept of having a receiver. And I don't think either party really wants a receiver in this case.

THE COURT: Okay. Mr. Ware, go ahead.

(Emphasis added.)

The principle articulated by the majority seems to rest on the premise that so long as appellant was warned of the ends (the relief requested) sought by appellee, that the means to reach that end are, in the words of the majority, "not of substantial significance." The majority takes comfort in the proposition that the ultimate relief sought by appellee was the same under a theory of "escrow agent" or "receiver." Appellant got fair notice of the relief sought, so the title of the agent used to engineer that relief is meaningless.

The majority further buttresses this argument by suggesting the outcome of the proceeding "was conceptually similar to the procedure O & G (appellee) had originally agreed to as provided in ... the contract." In its consideration of this point, the majority ignores an uncontroverted fact that it acknowledged early in the opinion; that for a variety of reasons, the parties had never operated in accordance with the stated provision throughout the life of the contract.

The point of error relative to inadequate notice should be granted because of the simple proposition that the specific statutory remedy ultimately awarded to appellee has an equally specific evidentiary burden distinct from the hodgepodge collection of remedies alleged in appellee's pleadings. When counsel for appellant walked into the Galveston courtroom on August 23, 1991, counsel did not know, and could not have known, that appellee was going to try to prove that the situation between the parties had deteriorated to the extent that their joint property was in "danger of being lost, removed, or materially injured." Appellant's choice of witnesses, conduct of the hearing, and complete strategy could have been, and in my opinion, would have been, affected by advance notice of the statutory remedy ultimately imposed. The most the pleadings warned appellant of was a generalized notion that the equities of the situation demanded some type of relief. The statement of facts shows appellant timely objected to the lack of pleadings to justify the type of relief sought by appellee both before and after the presentation of evidence at the hearing.

Finally, I would suggest the majority makes a fundamental error in confusing ends and means. Whether the arrangement between the parties fashioned by the trial judge mirrors the contract between the parties or not, it is not the purpose of receivership to attempt to put Humpty Dumpty together again as before the great fall. Receiverships are responses to immediate dangers. We should leave the curing of any breach to damages, if any, as found by the wisdom of a jury.

I find error in the proceedings in the trial court and would dissolve the receivership.