Alberto Bernhard ABELLA, Jeff Armstrong; Stephen J. Beck; William L. Bell; Terri Bugh; Cabec Energy Corp.; Brian Campbell; Joe F. Canterbury; Milton R. Copeland and L. Annelle Copeland; Conrad Coppedge; Daniel L. Crouch; William L. Crouch; Diamon F. Enterprise, Inc.; Donnell Pipe and Supply Co.; S. Gale Doty; William R. Ealey; Mike Faulkner; Ferrell & Moore; Full Boar Oil Tools, Inc.; Connie L. Gadt; Geological Exploration; Paul A. Gray, Jr.; Mary L. Hagan; Mary C. Harris; Robert F. Harris; A.E. Hassell and Wilma V. Hassell; Clifton L. Holmes; William D. Hughes; Roger Irons; E.M. Key; J.W. King; L & D Properties; Laird Oil & Gas Partnership; Tom W. Landers; William L. Lane; Glen MacConnell or Sandra MacConnell; Dorothy N. Manziel; Nolan Manziel; Eugene M. Massad, M.D.; McLennan Resources; Margaret B. Merritt; Midgap Energy Partnership; Mojo Oil and Gas Co., Ltd.; Dewey Moore; Johnny Moore; Waylon Morgan; Harold L. Myers, III; Donald R. Neumeyer; Peregrine Financial Corp.; Pinwheel, Inc.; David K. Rainey; B.K. Read and Bill V. Read; Ina May Reed and Lloyd A. Reed; Randy Renshaw; L.P. Rigel, III; Ro–Jo, Inc.; Scott Roloff; John B. Seastrum; Keith R. Smith; Lonn R. Spradlin; Robert Keith Stone; Jeffrey W. Streeter; A.R. Sweeney; Tommy Terry; Texavia International, Inc.; Jeffery D. Thomas; Susey Toombs; Tunis Land Venture; Harry Vowell; Scott Vowell; Mat Vansickle; Ronald Weaver; John C. Wessling; and George G. Wight, Appellants,

v.

KNIGHT OIL TOOLS, Appellee.

Richard W. ANDERSON; Stephen J. Beck; Michael Jake Browning; C. Reagan Cassity; Bill Clark; Milton Copeland; Conrad Coppedge; O.W. Craven; William R. Ealey; David R. Erwin; Full Boar Oil Tools, Inc.; Thomas S. Gay; Geological Exploration, Co.; Paul A. Gray, Jr.; Henry Gritter; Mary L. Hagan; Sam A. Hankla; A.E. Hassell; Wilma V. Hassell; Kilgore Tire Center, Inc.; J.W. King; Hilary A. Kruce; Edwin Dureska; L & D Properties; William Lane; Glen MacConnell; Eugene M. Massad, M.D.; Margaret B. Merritt; Merritt Brothers, Inc.; Mojo Oil and Gas Co., Ltd.; Dewey Moore; Johnny Moore; Waylon Morgan; Morgan Exploration Company, Inc.; Stephen C. Nethery; Michael Pavliska; E. Hunt Powell; James A. Powell, Jr.; B.K. Read; Reserve Exploration, Inc.; Donald W. Rhea; Roy B. Sanders; Roy F. Sanders; Scandrill Inc.; Pam Seegers; Robert Keith Stone; Swenke Energy, Ltd.; Duke Turner; Hank Wade; Daniel L. Crouch; Caldwell Hagan; Linda Wade; Henry H. Wade; Charles M. Wilcox; Dick Randell Wood; Woolley Fishing Tool, Inc.; Larry Sanders Trustee; and Texas National Bank, Appellants,

v.

BAKER OIL TOOLS, a Division of Baker–Hughes Co.; Knight Oil Tools, Inc.; Consolidated Pipe and Supply Company, Inc.; and Beka Drilling Fluids, Inc., Appellee,

Michael Jake BROWNING; Bill Clark; Milton R. Copeland and L. Annelle Copeland; Conrad Coppedge; Full Boar Oil Tools, Inc.; Geological Exploration Co.; Kilgore Tire Center, Inc.; J.W. King; L & D Properties; William L.

Lane; Eugene M. Massad, M.D.; Mojo Oil and Gas Co., Ltd.; Johnny Moore; Waylon Morgan; Morgan Exploration Company, Inc.; B.K. Read and Bill V. Read; Reserve Exploration, Inc.; Donald W. Rhea; Dave Sanders; Scandrill Inc.; and Jeffery D. Thomas, Appellants.

v.

BAKER OIL TOOLS, a Division of Baker–Hughes Co. & Knight Oil Tools, Inc., Appellee.

Nos. 01–95–01242–CV, 01–95–01207–CV and 01–95–01231–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 10, 1997.

Edwin Paul Keifer, Dallas, for appellant.

James Sample Robertson, Tyler, for appellee.

Before MIRABAL, HEDGES and HUTSON–DUNN,[1] JJ.

1. Justice Hutson–Dunn retired from the First Court of Appeals after submission of the case, but before the opinion issued. Justice Hutson–Dunn continues to sit on this case by assignment.

## OPINION

MIRABAL, Justice.

These are three consolidated interlocutory appeals from orders appointing a receiver. We affirm.

Plaintiffs are the holders of statutory mechanics and materialman's liens on three oil and gas producing leases and wells. Defendants are working interest owners of the three oil and gas producing leases and wells. Plaintiffs filed suit for foreclosure of their M & M liens, and sought the appointment of a receiver to take possession of the proceeds of production attributable to the three wells prior to the foreclosure sale. The trial court in each case found that plaintiffs had met their prima facie burden that they would likely prevail in their foreclosure actions, and appointed a receiver to collect the proceeds of production attributable to the three wells during the pendency of the litigation. The order in each case states, in part:

It is ORDERED that the receiver shall take possession of the net proceeds from the sale of production from the property payable to the Defendants, after deduction of all operating expenses by the operator, monthly as paid by the operator, and upon receipt of same the receiver shall immediately tender said proceeds to the District Clerk ... to be held by the District Clerk in an interest bearing account maintained by an FDIC insured banking institution until further order of this Court.

The order in each case further set the amount of the applicant's bond at $25,000. In one case, the order set the amount of the receiver's bond at $15,000; in the other two cases, the receiver's bond was set in the amount of $1000 each. Leonard Pipkin was named the receiver in all three cases.

In their first point of error, defendants assert the trial court erred in granting the plaintiffs' applications for appointment of a receiver because the plaintiffs, as holders of asserted statutory mechanics and materialman's liens, are not entitled to the appointment of a receiver as a matter of law.

The appointment of a receiver, either as authorized by statute or equity, will not be disturbed on appeal unless the record reveals a clear abuse of discretion. *O & G Carriers, Inc. v. Smith Energy 1986–A Partnership*, 826 S.W.2d 703, 706 (Tex.App.—Houston [1st Dist.] 1992, no writ). The appellate court will not substitute its judgment for that of the trial court, but will determine whether the trial court's decision was either arbitrary or unreasonable. *Id.*

The parties have stipulated to certain facts contained in "An Agreed Statement of the Case and Facts Proven", filed in each case; it reads as follows:

The case came before the District Court as a request for a receiver by the [Plaintiffs] herein. [Plaintiffs] herein, as to the evidence submitted, relied upon the affidavits attached to their verified complaints, same being timely filed mechanics and materialman's liens, along with all of the necessary attachments. For the purposes of the receivership hearing only, all of the prerequisites for a determination that the [Plaintiffs] had presented a prima facie entitlement to foreclosure of their mechanics and materialman's liens had been met. The amount of said liens was not put into dispute at the hearing on whether to grant the receiver.

[Defendants] herein opposed the granting of the receivership. [Defendants], as to the evidence presented, relied upon Exhibit no. 1, a compilation of business records from Reserve Production, which detailed that the [Defendants] had their working interest conveyed to them and recorded in the county where the lease at issue is located, that [Defendants] had executed Division Orders with Reserve Production, that Reserve Production had executed 100% indemnifying Division Orders with purchasers of oil and of gas, that Reserve internally acknowledged said division of interests. Defendants assert such facts entitle them to a purchase money security interest in the proceeds of the production of the lease at issue under Texas Business and Commerce Code Section 9–319, [which] has been met.

Plaintiffs provided labor and materials for the digging, drilling, completing, maintaining, operating and repairing of the three involved

oil and gas wells. Plaintiffs have not been paid in full for their services. Plaintiffs perfected their M & M liens against the oil and gas leases prior to defendants' acquisition of interests in the leases. The main issue in this case is whether the value of plaintiffs' M & M liens on oil and gas leases can be preserved pending the foreclosure proceedings. Defendants claim they have the right to receive all the proceeds from production of oil and gas from the wells until plaintiffs actually foreclose on their liens, even if this means that the oil and gas reserves become totally depleted, leaving the oil and gas leases worthless. Defendants admit that their rights will be cut off at the time of foreclosure on the M & M liens; they insist, however, that as long as foreclosure can be forestalled, proceeds from oil and gas production belong to them exclusively.

Section 64.001 of the Texas Civil Practice and Remedies Code (Vernon 1986) sets forth when the remedy of statutory receivership is available. It reads in relevant part:

> (a) A court of competent jurisdiction may appoint a receiver:

> .    .    .    .    .

> (2) in an action by a creditor to subject any property or fund to his claim;

> .    .    .    .    .

> (6) in any other case in which a receiver may be appointed under the rules of equity.

> (b) Under Subsection (a) ... (2) ... the receiver may be appointed on the application of the plaintiff in the action or another party. The party must have a probable interest in or right to the property or fund, and the property or fund must be in danger of being lost, removed, or materially injured.

TEX.CIV.PRAC. & REM.CODE ANN. § 64.001(a) (Vernon 1986).

Plaintiffs asserted the following in their first amended petition:

> [T]his is an action by plaintiffs as creditors to subject property to plaintiffs' claim; plaintiffs have a probable interest in or right to the property and the property is in danger of being lost, removed, or materially injured by depletion;

> .    .    .    .    .

> [The wells are] being produced and the proceeds of sale are being disbursed to Defendants. Plaintiffs' security for its debt [are] the oil and gas leases, and their security is being impaired by draining of the oil and gas from the oil and gas leases upon which Plaintiffs' liens have attached. Hydrocarbons are unique because they are not reproducible and the amount is finite. The Oil and Gas Leases to which Plaintiffs' liens have attached are likewise unique because as production occurs, the value of the leases diminishes and finally becomes worthless. The value of Plaintiffs' liens diminish daily as the well is produced. Plaintiffs' security is being impaired, and their debt is being converted from a secured debt into a worthless unsecured debt. Plaintiffs have no adequate remedy at law and will be irreparably harmed and damaged unless the Defendants are required to preserve the status quo by setting aside, out of the proceeds of production, and depositing into the registry of this Court, a sum which is sufficient to preserve the status quo pendente lite ...

Defendants argue that plaintiffs are not entitled to appointment of a receiver as a matter of law because plaintiffs did not prove a statutory basis for the appointment of a receiver. As to subsection (a)(2), defendants argue that it is not applicable because plaintiffs' liens do not extend to *current production of oil and gas*.

Plaintiffs acquired a mineral contractor's lien to secure payment for labor and materials related to mineral activities at the oil and gas wells. According to the lien statute, the following property is subject to the lien:

> (a)(1) the material, machinery, and supplies furnished or hauled by the lien claimant;

> (2) the land, leasehold, oil or gas well, water well, oil or gas pipeline and its right-of-way, and lease for oil and gas purposes for which the labor was performed or material, machinery, or supplies were fur-

nished or hauled, and the buildings and appurtenances on this property;

(3) other material, machinery, and supplies used for mineral activities and owned by the owner of the property listed in Subdivision (2).

(4) other wells and pipelines used in operations related to oil, gas, and minerals and located on property listed in Subdivision (2).

TEX.PROP.CODE ANN. § 56.003 (Vernon 1995). Plaintiffs' recorded lien affidavits state that plaintiffs provided labor and materials to Reserve Production, Inc. (defendants' predecessor), and that Reserve Production, Inc. was the owner of the "oil and gas leasehold estate and of the oil and gas wells." Therefore, plaintiffs' M & M liens attached not only to the materials they supplied, but also to the oil and gas leaseholds and the oil and gas wells. *Bethlehem Supply Corp. v. Wotola Royalty Corp.*, 140 Tex. 9, 165 S.W.2d 443, 445 (1942) (mineral lien extends to specified property owned by persons to whom labor and materials are furnished); TEX.PROP.CODE ANN. § 56.003. The oil and gas leases grant the right to extract and produce the oil and gas from the land.

There is no dispute that the value of plaintiffs' liens diminish as the wells are produced, and it is clear that the action to foreclose on plaintiffs' M & M liens is an "action by creditors to subject the oil and gas leases to the creditors' claims", as contemplated by section 64.001(a) governing the appointment of receivers. Under the facts of this case, we cannot say that plaintiffs are not entitled to the appointment of a receiver as a matter of law, as asserted by defendants. *See Texas Co. v. Kent*, 60 S.W.2d 857, 860 (Tex.Civ. App.—Waco 1933, writ dism'd); Leroy Jeffers, *Statutory Liens on Current Production of Oil and Gas*, 13 TEX.L.REV. 180, 194–195 (1934). The record does not reveal a clear abuse of discretion; therefore, we will not disturb the trial court's order on appeal. *O & G Carriers, Inc.*, 826 S.W.2d at 706.

We overrule point of error one.

■ In their second point of error, defendants assert the trial court erred in granting plaintiffs' applications for appointment of a receiver because defendants, as the holders of purchase money security interests under Texas Business and Commerce Code section 9.319, have a superior right to the production from the oil and gas leases at issue.

The record shows that plaintiffs perfected their recorded M & M liens against the oil and gas leases *prior to* defendants' acquisition of working interests in the same oil and gas leases. The title acquired by defendants in the oil and gas leases was thus encumbered by plaintiffs' lien claims. TEX.PROP. CODE ANN. § 13.002 (Vernon 1984).

Accordingly, we overrule defendants' point of error two.

We affirm the judgment.

HUTSON–DUNN, J., dissenting.

HUTSON–DUNN[1], Justice, dissenting.

I respectfully dissent.

First I note that the appellees state in their first amended petition that the "security for its debt [are] the oil and gas leases." The court's order provided that the receiver collect the "net proceeds" from the sale of the oil and gas produced from the well. The wording of section 56.003, creating the statutory lien under which appellees claim, does not include *oil and gas produced from the well or the proceeds from its sale.* A lien attaches only to property specifically mentioned in the statute. *Wilkins v. Fecht*, 356 S.W.2d 855, 855 (Tex.Civ.App.—San Antonio 1962, writ ref'd). A lien specifically allowed by statute on a lease for oil and gas purposes does not give a lien upon the oil and gas produced or the proceeds derived therefrom. Leroy Jeffers, *Statutory Lien on Current Production of Oil and Gas*, 13 TEX.L.REV. 180, 194–95 (1934); *see also Wilkins*, 356 S.W.2d at 855; *United States v. Texas E. Transmission Corp.*, 254 F.Supp. 114, 119 n. 13 (W.D.La.1965).

I disagree with the majority's conclusion that the appellees' M & M liens attach not

1. Justice Hutson–Dunn retired from the First Court of Appeals after submission of the case, but before the opinion issued. Justice Hutson–Dunn continues to sit on this case by assignment.

only to the materials furnished, but also to the production and the proceeds. The statutory mineral lien extends only to the property of the person under whose auspices the labor, material, or supplies are furnished. Therefore, the supplies furnished to a leaseholder attach to the leaseholder's right to withdraw oil and gas from the land. *Bethlehem Supply Corp. v. Wotola Royalty Corp.*, 140 Tex. 9, 165 S.W.2d 443, 445 (1942); TEX. PROP.CODE ANN. § 56.003(b) (Vernon 1995). If the legislature had intended that the statutory lien attach to the production proceeds created by the withdrawal of the oil and gas from the land, it would have provided such in the statute. It is interesting to note that the appellees did not ask for an injunction to prevent production or depletion of the leasehold.

To succeed in the appointment of a receiver under section 64.002(a)(1), the party seeking a receiver must have a probable interest in or right to the property or fund, and the property or fund must be in danger of being lost, removed, or materially injured. TEX. CIV.PRAC. & REM.CODE ANN. § 64.001(b) (Vernon 1986). Since appellees' liens do not extend to the "proceeds of production," they have no interest in, or right to, the proceeds. Therefore, subsection (a)(2) of section 64.001 does not apply in this case.

As to appellees' right to have a receiver appointed under section 64.001(a)(6), initially I note that in this case, foreclosure of the section 56.002 liens is appellees' remedy at law. Additionally, appellees sought appointment of a receiver to protect "their interest" in property—proceeds from production—on which I would hold that they have no statutory lien. Appellees assert that the appellants may deplete the reservoir and misapply the proceeds before appellees' foreclosure action is complete. There is no evidence that appellants are rapidly depleting reserves. Appellees did not contract for additional security. They were well aware that the appellants would be engaging in the normal production of oil and gas. They have security through section 56.003 statutory liens in the material, machinery, supplies, leasehold, well, and other property specifically listed in the statute. Equity should not step in to further secure creditors who are already secured by statutory liens. *Rogers v. Daniel Oil & Royalty Co.*, 110 S.W.2d 891, 894 (Tex.1937) (where adequate and complete remedy at law is provided, court will not grant equitable relief). I would hold that the trial court abused its discretion in appointing a receiver to collect and hold such proceeds under the circumstances in this case.

I would sustain point of error one.

MIRABAL and HEDGES, JJ., also participating.