Opinion issued October 2, 2008.








            





In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-07-00273-CV
 

 
 
DIANA FITE, M.D. AND PATRICK G. WOODS, M.D., Appellants
 
V.
 
EMTEL, INC. AND JOSEPH DEGIOANNI, M.D., Appellees
 

 
 
On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2003-69942
 

 

MEMORANDUM OPINION ON REHEARING

          We grant appellant’s motion for rehearing. See Tex. R. App. P. 49.3. We
withdraw our January 17, 2008 opinion, substitute this opinion in its place, and vacate
our prior judgment. 
          
          
          In this interlocutory appeal,


 appellants, Diana Fite, M.D. and Patrick G.
Woods, M.D., appeal the trial court’s order reappointing James Raymond as receiver
for Brazos Emergency Physicians Association, P.A. (“BEPA”), arguing that (1) no
valid basis was established for placing BEPA into receivership; (2) James Raymond
is disqualified from serving as receiver; and (3) the bond provisions of the
reappointment order rendered the order per se invalid and the amount of bond ordered
was “impermissibly low.” Appellees, however, contend that the original receivership
never expired and that we lack subject matter jurisdiction to consider the appeal of
the trial court’s order of reappointment. We affirm.
BACKGROUND
          The parties to this cause and its numerous related lawsuits, who have spent
nearly four years battling each other in court, all share a connection to BEPA, a
professional association formed in 1997 to provide hospitals with physicians for their
emergency care facilities. In 1999, BEPA entered into an agreement for billing,
marketing, and management services with appellee, Emtel, Inc., wherein Emtel would
receive 30% from all fees collected on behalf of BEPA that are not associated with
telemedicine contracts. Joseph Degioanni, M.D., was the sole director of Emtel.
          In 2003, appellant, Patrick G. Woods, M.D., a member of BEPA, filed a
derivative suit against appellee, Degioanni, who, at the time, was also BEPA’s
president and treasurer. Woods alleged that Degioanni had misappropriated funds to
benefit Emtel. Shortly thereafter, following a “secret board meeting” that was
conducted by cell phone in a parking garage, Degioanni was ousted as president of
BEPA, and Degioanni’s and Emtel’s access to the bank accounts and lock boxes was
limited. Degioanni, along with Emtel, filed individual and derivative actions seeking
injunctive relief against two members of the BEPA board of directors, appellant,
Diana Fite, M.D. and Medford Cashion, M.D. The second derivative suit is the suit
before us. 
          In this second derivative suit, Emtel and Degioanni, individually and on behalf
of BEPA, applied for a temporary restraining order, temporary injunction, and motion
to compel arbitration, asserting that “the harm caused by preventing Emtel from
access to BEPA bank accounts and lock boxes is irreparable and imminent. The
recent actions by Dr. Cashion on behalf of BEPA have caused BEPA to be in clear
breach of the Agreement. . . .” Emtel and Degioanni sought a temporary injunction
and restraining order requiring Cashion and Fite to “restore the status quo with regard
to BEPA’s bank accounts and lock boxes.” On December 30, 2003, the trial court
issued an ex parte temporary restraining order


 to “maintain status quo pending
resolution of this case.” 
          Almost two weeks later, the trial court heard Emtel and Degioanni’s
application for temporary injunction. On January 20, 2004, the parties agreed to and
the trial court appointed a receiver, James Raymond, to act as BEPA’s sole director
and president and to take charge and conduct the affairs of BEPA. The trial court
also ordered that the “receivership [] continue in effect until further order of this
court.” 
          The parties continued to litigate. Among other courses of action, Raymond
negotiated, through his counsel, a series of agreements that, subject to the trial court’s
approval, would settle some of the litigation involving BEPA.


 On February 20,
2007, Raymond moved for approval of numerous settlement agreements releasing
BEPA’s claims against Degioanni and several other parties. Fite and Woods
contested the motion and, relying on the Texas Civil Practice and Remedies Code’s
(“CPRC”) receivership provisions, argued that Raymond lacked the power to act on
BEPA’s behalf because his status as receiver had expired on January 20, 2007—three
years after his appointment. In response, Degioanni and Emtel argued that Raymond
was appointed pursuant to the Business Corporations Act; therefore, his appointment
did not terminate until “the condition necessitating the appointment of a receiver has
been remedied.” Degioanni and Emtel then enumerated several reasons why the
receiver was still necessary. The trial court again appointed Raymond “under the
same terms and conditions as in the [2004] original order” to continue until “90 days
after the completion of the litigation that has been initiated by [Raymond] including
any appeals which may arise from that litigation and the distribution of any funds
obtained thereby.” Fite and Woods, who joined the underlying suit as intervenors,
appeal the order appointing Raymond as receiver.
JURISDICTION
Expiration of the Original ReceivershipBecause Degioanni and Emtel contend that we have no jurisdiction to consider
this appeal, the first issue we address is whether the original receivership created on
January 20, 2004 expired after three years. Citing to the language of Articles 7.05
and 7.06 of the Texas Business Corporation Act (the “Act”), Degioanni and Emtel
argue that (1) the original receivership was created under the Act and (2) the term of
receiverships created under the Act do not expire. Thus, they argue that it was
“unnecessary” for the trial court to issue an order “reappointing” Raymond as the
receiver and that we do not have subject matter jurisdiction to consider the merits of
this appeal,


 because no interlocutory appeal will lie from the trial court’s
“unnecessary” order. Thus we turn to the issue of whether the receivership had
expired.


 
          To determine when a corporate receivership expires, we look to both the Texas
Civil Practice and Remedies Code and the Act. The CPRC expressly provides that
corporate receiverships expire three years after the receiver is appointed. See Tex.
Civ. Prac. & Rem. Code Ann. § 64.072 (Vernon 2008). Section 64.072(a)
specifically provides as follows:
Limited Duration
(a)Except as provided by this section, a court may not administer a
corporation in receivership for more than three years after the date
the receiver is appointed, and the court shall wind up the affairs
of the corporation within that period. 

Id.      
The statute also provides that, under certain circumstances and upon the application
of a party and after a hearing, the receivership may be extended for no more than five
years beyond the original three year term. See Tex. Civ. Prac. & Rem. Code Ann.
§ 64.072(d) (Vernon 2008).
          Articles 7.05 and 7.06 of the Act also address the term of a corporate
receivership. They provide that a receivership created under the Act shall be
terminated by the trial court when the condition necessitating the appointment of a
receiver is remedied. See Tex. Bus. Corp. Act Ann. art. 7.05, § B, art. 7.06, § B
(Vernon 2003). Both Articles 7.05 and 7.06 contain the following provision:B.In the event that the condition of the corporation necessitating
such an appointment of a receiver is remedied, the receivership
shall be terminated forthwith and the management of the
corporation shall be restored to the directors and officers . . . .

Id.
          The Bar Committee’s comments accompanying the Act explain the relationship
between the Act’s receivership provisions and the CPRC. The provisions of the Act
and CPRC are to be read together unless they are inconsistent with one another:
Heretofore receiverships for corporations or their assets have not been
the subject of separate treatment in the statutes but have been governed
by Articles 2293 et seq., Tex.R.C.S. (1925),


 relating generally to
receiverships. These general provisions will continue to be applicable
to receiverships other than those for corporations subject to the Act or
their assets and will also continue to be applicable to receiverships for
corporations or their assets with respect to such matters as
qualifications, powers, duties and administrative procedures of
receivers which are not inconsistent with the specific provisions of the
Act.

Tex. Bus. Corp. Act Ann. art. 7.04 cmt. (Vernon Supp. 2003) (emphasis added).

          In this case, the original order does not state whether the receivership was
created under the Act or the CPRC. Nevertheless, contrary to the arguments of 
Degioanni and Emtel, receiverships created under the Act do not have terms that
never expire. The provisions of the Act and the CPRC regarding the termination of
a receiver’s powers are not inconsistent with one another. The CPRC’s provisions
sets forth the maximum term for a corporate receivership and the Act sets forth the
circumstances under which the receivership must be terminated before the term of the
receivership expires. Reading the CPRC and the Act together we hold that, in the
absence of a timely motion to extend, a corporate receivership expires three years
after it is created and that when the conditions necessitating the creation of the
receivership have been remedied, the receivership shall be terminated before the term
of the receivership expires. Here, since no motion to extend was granted by the trial
court, the original receivership expired on January 20, 2007—three years after it was
created. Accordingly, for a receivership to exist regarding BEPA after this date, the
trial court was required issue a new order appointing a receiver, and we have
jurisdiction over the appeal of this order. See Tex. Civ. Prac. & Rem. Code Ann.
§ 54.014(a) (Vernon 2008). APPOINTMENT OF THE RECEIVER
           In their first issues on appeal, Fite and Woods argue that the trial court erred
in appointing Raymond as receiver because (1) no valid basis was established for
placing BEPA into receivership and (2) Raymond is disqualified from serving as a
receiver of BEPA. We examine each of these issues in turn.
Standard of Review
          Because a receivership is an equitable remedy within the sound discretion of
the court, an appointment of a receiver will not be disturbed on appeal unless the
record reveals an abuse of discretion. Alert Synteks, Inc. v. Jerry Spencer, L.P., 151
S.W.3d 246, 251 (Tex. App.—Tyler 2004, no pet.) (citing Abella v. Knight Oil Tools,
945 S.W.2d 847, 849 (Tex. App.—Houston [1st Dist.] 1997, no writ). We will
reverse for abuse of discretion only when we conclude that the trial court acted in an
unreasonable or arbitrary manner. Id. (citing Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 242 (Tex. 1985)). A trial court abuses its discretion when it acts
without reference to guiding rules and principles. Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 241–42 (Tex. 1985). An abuse of discretion does not occur if
the trial court bases its decision on conflicting evidence. Davis v. Huey, 571 S.W.2d
859, 862 (Tex. 1978). If the decision was within the trial court’s discretionary
authority, we may not reverse simply because we might have reached a different
decision. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Downer,
701 S.W.2d at 242.
          The remedy of receivership is an extraordinary remedy that must be cautiously
applied. It has been described as a drastic, far-reaching, and harsh remedy. See
Balias v. Balias, Inc., 748 S.W.2d 253, 257 (Tex. App.—Houston [14th Dist.] 1988,
writ denied). Accordingly, a receiver will not be appointed if another remedy exists
at law or in equity that is adequate and complete. Tex. Bus. Corp. Act Ann.
art. 7.05, § A (Vernon Supp. 2003).
 

Statutory Basis for Receivership
          Fite and Woods argue that Degioanni and Emtel have not established any
circumstances that could warrant placing BEPA back into receivership under the 
Act. We disagree. Article 7.05 of the Act governs appointment of a rehabilitative
receiver “for the assets and business of a corporation.” Id. The Act provides that the
district court of the county where a corporation’s registered office is located may
appoint a receiver to conserve the assets and business of the corporation and to avoid
damage to the parties at interest, if all other requirements of law are complied with
and there are no other legal or equitable remedies available, including the
appointment of a receiver for specific corporate assets. Id. Article 7.05, section A
sets forth the preliminary prerequisites for appointment of the receiver:
A receiver may be appointed for the assets and business of a corporation
by the district court for the county in which the registered office of the
corporation is located, whenever circumstances exist deemed by the
court to require the appointment of a receiver to conserve the assets and
business of the corporation and to avoid damage to parties at interest,
but only if all other requirements of law are complied with and if all
other remedies available either at law or in equity, including the
appointment of a receiver for specific assets of the corporation, are
determined by the court to be inadequate . . . . Id.
          Article 7.05, section A then lists the specific circumstances that may warrant
the appointment of a rehabilitative receivership.


 
           In this case, the evidence in the record supports the trial court’s reappointment
of Raymond under Article 7.05, section (A)(1)(b) of the Act.


 Under this provision,
the trial court may appoint a receiver in an action by a shareholder when it is
established that “the directors are deadlocked in the management of the corporate
affairs and the shareholders are unable to break the deadlock, and that irreparable
injury to the corporation is being suffered or is threatened by reason thereof.” See
Tex. Bus. Corp. Act. Ann. art. 7.05 § (A)(1)(b). The record reflects that the trial
court was well aware, through the proceedings, of the level of dysfunction of BEPA’s
Board of Directors that (1) prevented the directors and shareholders from lawfully
meeting and making decisions about BEPA’s affairs and (2) necessitated the creation
of the original receivership. The trial court also heard evidence from which it was
reasonable to conclude that, in the absence of a receivership, the directors and
shareholders could not meet to lawfully move forward in the conduct of BEPA’s
business and the lack of a receiver would cause irreparable damage to the corporation.
Raymond testified that, without a receiver in place, the board could not move forward
to manage BEPA’s principal asset, the ongoing litigation in the 334th District Court
in Harris County. He testified that issues as fundamental as the identity and voting
authority of the directors and shareholders of BEPA are in dispute and that under
these circumstances any action to move the corporation’s business forward by the
directors and shareholders would spawn even more litigation between the parties.
Appellee’s Counsel:Okay. And the principal asset of BEPA is it
or is it not the litigation that is going on in the
334th?
 
          Raymond:                        Correct.
 
          Appellee’s Counsel:        Why can’t—just in your view—just a board of
directors just handle that litigation?
 
          Raymond:                        I can’t imagine someone standing in my shoes
without the protection of the receivership code in the
middle of this litigation. This is a very—this has
become a very hostile litigation. I don’t know what
that make up would be. I think there [are] disputes
as to who the shareholders are. I don’t know how
you can have a shareholders’ meeting when there
[are] disputes as to that. I think there are disputes as
to who the directors are. I can’t imagine what the
outcome would be if the shareholders elected a
BEPA board and the BEPA board appointed
Dr. Degioanni as the president of BEPA to carry
forward. I think there would be quite a bit of
litigation following that.
 
          Nevertheless, Fite and Woods argue that the trial court erred in placing BEPA
into receivership because a receivership would jeopardize BEPA’s existing business
relationships and BEPA’s ongoing efforts to obtain new emergency room contracts.
However, contrary to their argument of the “stigma” attached to a receivership, the
court heard testimony from Raymond that BEPA has not lost any business contracts
and First Community Bank did not consider BEPA’s note in default during the course
of the original receivership. Likewise there is no evidence in the record that the lack
of new contracts during term of the original receivership was a result of the
receivership itself rather the contentious and public litigation involving the parties
and BEPA. Accordingly, we hold that the trial court did not err in rejecting this
argument against the appointment of a receiver. 
           Fite and Woods also argue that a receivership is unnecessary because there is
another remedy available to the court to insure the protection of BEPA’s interest in
the ongoing state litigation in 334th District Court in Harris County. They argue that
BEPA can prosecute the litigation at the direction of management or through
shareholder derivative claims and that no basis exists for requiring BEPA to incur the
substantial expense of having a receiver oversee litigation on its behalf. In light of the
evidence presented regarding the past dysfunction of BEPA’s management and the
current disputes as to the identity and voting authority of the directors and
shareholders, we hold that the trial court did not err in rejecting this argument against
the appointment of a receiver. Accordingly, we hold that the trial court did not abuse
it discretion in placing BEPA in receivership under Article 7.05, section (A)(1)(b) of
the Act.RAYMOND’S QUALIFICATIONS AS RECEIVERIn their third and fourth issues on appeal, Fite and Woods argue that even if the
trial court did not err in placing BEPA in receivership, Raymond is not qualified to
serve as the receiver of BEPA because (1) he is not a physician, (2) during the
original receivership he “abdicated” his receiver powers to Degioanni, an interested
party to this litigation and (3) during the original receivership he committed acts that
reflect that he is not a disinterested person to this lawsuit. 
Raymond’s Status as a Non-Physician
          Fite and Woods argue that Raymond is not qualified to serve as a receiver of
BEPA because he is not a licensed physician. They argue that the appointment of a
non-physician as receiver of BEPA, a professional association of physicians, violates
the corporate practice of medicine doctrine embodied in the Texas Medical Practice
Act and the mandates of the Texas Professional Associations Act (“TPAA”). Fite and
Woods argue these statutes require that only a licensed physician may serve as a
receiver for a professional association of physicians.
          Under the “corporate practice of medicine” doctrine codified in the Texas
Medical Practice Act, the practice of medicine is restricted to licensed physicians. 
See Tex. Occ. Code Ann. § 164.052(a)(17) (Vernon Supp. 2008). Specifically, the
doctrine prohibits a corporation comprised of lay persons, which employs licensed
physicians to treat patients, from receiving a fee. Gupta v. Eastern Idaho Tumor Inst.,
Inc., 140 S.W.3d 747, 752 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). 
“The purpose of [the prohibition on the corporate practice of medicine] is to preserve
the vitally important doctor-patient relationship and prevent possible abuses resulting
from lay control of corporations employing licensed physicians to practice medicine.” 
Gupta, 140 S.W.3d at 752. 
          The TPAA allows for physicians to practice together through a limited liability
entity without violating the Medical Practice Act’s prohibition against the corporate
practice of medicine. Specifically, the TPAA provides that “all members of an
association shall be licensed to perform the type of professional service for which the
association is formed.” See Tex. Rev. Civ. Stat. Ann. art. 1528f, § 2(B) (Vernon
Supp. 2008). The TPAA also requires that all officers and members of the Board of
Directors or Executive Committee [of a professional association] shall be members
of the professional association.” Id., § 9(c).
          Neither the Medical Practice Act or the TPAA provide a blanket prohibition
on the appointment of a non-physician as the receiver of a professional association
of physicians. The Medical Practice Act and the TPAA do not even mention
receiverships. While the TPAA provides the requirements for the officers and
members of the board of directors of a functional association, it does not purport to
mandate the qualifications, powers, and duties of a receiver of the association
appointed under the Texas Business Corporations Act. 
          Furthermore, we hold that Raymond’s appointment does not violate the
corporate practice of medicine doctrine embodied in the Medical Practices Act or the
TPAA. In its appointment order, the trial court authorized Raymond, as the receiver,
to take control of only the business operations of the association. He is neither
directed nor empowered to take any steps involving the dispensing of medical
services. The court has not authorized Raymond to employ personnel to perform
medical services or receive an income for those services. The court heard testimony
that Raymond understands that the court’s order only empowers him to oversee the
business operations of BEPA and that matters concerning the practice of medicine,
such as the filing of regulatory statements with the appropriate state medical
authorities, are handled by Degioanni, a licensed physician and the president of
BEPA.


 Accordingly we hold that the trial court did not err in appointing Raymond, 
a non-physician, as the receiver of BEPA.
Degioanni’s Role in BEPA under the Original Receivership 
          Fite and Woods also argue that the court erred in finding that Raymond was
qualified to serve as a receiver because, under the original receivership order, he
unlawfully “abdicated his receivership authority” to Degioanni, who Fite and Woods
allege has engaged in “egregious breaches of fiduciary duty to BEPA.” However,
there is evidence in the record contradicting these allegations that the trial court could
have reasonably considered in favor of Raymond’s appointment. The court’s order
itself was evidence that Raymond never “abdicated” his authority to Degioanni. As
noted above, the appointment order empowered Raymond to take charge of only the
business operations of BEPA, not matters pertaining to the provision of medical
services. These matters remained subject to the control of Degioanni as a licensed
physician and the president of BEPA. Furthermore, Raymond testified that after
investigation, he concluded that Degioanni had not engaged in the wrongful conduct
alleged by Fite and Woods. Accordingly, we hold that the trial court did not abuse its
discretion in appointing Raymond despite the allegations concerning Raymond’s
abdication of his authority to Degioanni. 
Raymond’s Conduct under the Original Receivership
          Fite and Woods also assert that, under the original receivership, Raymond
engaged in the following acts that establish that he is not a disinterested person to this
lawsuit and that disqualify him from serving as BEPA’s receiver: (1) purporting to
redeem Woods’ and Fite’s BEPA stock in an effort to deprive them of standing to
pursue claims on BEPA’s behalf, (2) attempting to settle the derivative claims asserted
by Fite and Woods on inadequate investigation and for inadequate consideration, (3)
accepting as part of the Allocation Agreement, a contingent interest in the claims he
has asserted on BEPA’s behalf, thereby creating an incentive to pursue the litigation
of those claims even if it threatens other business or claims of BEPA, and (4) moving
the trial court to extend his own receivership. Nevertheless, there is evidence in the
record contradicting these allegations that the trial court could have reasonably
considered as credible and in favor of Raymond’s appointment. 
            The record reflects that Raymond has served as a receiver in the Harris County
courts for about 17 years. Prior to his appointment in this case, Raymond served as the
receiver of a hospital for two and one-half years. At the time of the hearing for his
reappointment, Raymond had spent over 1000 hours reviewing BEPA’s records and
running its business operations as the receiver. During Raymond’s tenure as receiver,
despite the ongoing hostilities between the parties, BEPA has remained an ongoing
concern, has not lost any existing contracts, and the bank has not declared it in default
of its loan. Although Fite and Woods allege that the purported buyback of their stock
in BEPA was for wrongful purposes, the court heard contradictory testimony that the
purchase offers were in accordance with BEPA’s bylaws and the receivership order
and there was no evidence before the trial court that the amount offered was not
reasonably supported by Raymond’s research. 
          With respect to Fite and Woods’ allegations of impropriety regarding the
negotiation of various settlement agreements, Raymond testified as to research he did
to satisfy himself that the settlement with Degioanni and Emtel was reasonable and for
adequate consideration, and that Degioanni had not participated in the wrongful
conduct alleged by Fite and Woods. While Fite and Woods fault Raymond for not
reviewing any of Emtel’s corporate records during this process, Raymond testified that
it was his understanding that he did not have the authority under the receivership order
to access these records. Raymond also testified that his review of Emtel’s records was
not necessary because his careful inspection of BEPA’s corporate records was
sufficient to allow him to determine if there had been any unlawful transfers between
BEPA and Emtel. Fite and Woods also criticize Raymond for not reading the report
of their own expert, Warren Cole, regarding his investigation into the finances of
BEPA and Emtel before entering into the settlement agreements. However, the trial
court heard testimony from Cole that this was only a preliminary report, subject to
revision.


 Raymond testified that, pursuant to the warranty in the agreement, if Cole’s
report ultimately established any misconduct by Degioanni unknown to Raymond at
the time of settlement, Raymond would be entitled to pursue claims for that conduct
against Degioanni. 
          With respect to Fite’s and Woods’ allegations regarding the Allocation
Agreement, Raymond testified regarding the research that he performed leading up to
this agreement. The record reflects that Fite and Woods simply disagree with
Raymond’s conclusions. While Fite and Woods also argue that Raymond’s fee
arrangement from the Allocation Agreement demonstrates his interest in the outcome
of this litigation, the record does not reflect that Raymond’s actions violated the terms
of the receivership order, and the ultimate method of payment and amount of
Raymond’s fee is subject to the trial court’s review and approval. Finally, we hold that
it was not unreasonable for the trial court to reject Fite’s and Woods’ argument that
a receiver’s actions to extend the receivership so that he could complete the tasks
entrusted to him disqualifies him from continuing to serve as a receiver. In light of the
conflicting evidence before the trial court, we hold that the trial court did not abuse
its discretion in finding that Raymond was qualified to serve as the receiver of BEPA.
THE BOND PROVISIONS OF THE REAPPOINTMENT ORDER
           In their fifth issue on appeal, Fite and Woods argue that the receivership order
is per se invalid because the trial court did not require Degioanni and Emtel, the
parties requesting appointment of a receiver, to post an appropriate bond. 
Additionally, in their sixth issue on appeal, Fite and Woods argue that the $500 bond
posted by the receiver is “impermissibly low.”
          A court may not appoint a receiver until two bonds have been filed. Both the
party applying for a receivership and the receiver must file a bond with the clerk of the
court payable to the defendant in an amount fixed by the court. See Tex. R. Civ.
P. 695a; Ahmad v. Ahmed, 199 S.W.3d 573, 575 (Tex. App.—Houston [1st Dist.]
2006, no pet.) (mandating the bond to be filed by the applicant); Tex. Civ. Prac. &
Rem. Code Ann. § 64.023 (Vernon 2008) (mandating the bond to filed by the
receiver). The purpose of these bonds is to ensure that the defendant can be
reimbursed for any damages caused by the appointment of the receiver in the event
that the receiver was wrongfully appointed. Id. These bonds are a prerequisite to the
appointment of a receiver, and the trial court’s failure to require that both of the bonds
be filed necessitates reversal of the order appointing the receiver. Ahmad v. Ahmed,
199 S.W.3d at 575. The filing of a bond by the receiver will not satisfy the bond
requirement for the applicant. Id.
Applicant’s Bond
           Fite and Woods have waived any issue on appeal regarding the trial court’s
failure to require an applicant’s bond. Pursuant to Rule 33.1(a) of the Texas Rules of
Appellate Procedure, as a prerequisite to presenting a complaint for appellate review,
the record must show that the complaint was made to the trial court by a timely
request, objection, or motion that “stated the grounds for the ruling that the
complaining party sought from the trial court with sufficient specificity to make the
trial court aware of the complaint, unless the specific grounds were apparent from the
context.” Tex. R. App. P. 33.1(a)(1)(A).
          Here, upon review of the record, and especially in light of the fact that Fite did
not object to absence of an applicant’s bond in the original receivership order, we hold
that Fite’s objection before the trial court to the entry of the receivership order was not
stated with sufficient specificity to put the trial court on notice that she was
complaining of the lack of an applicant’s bond rather than the lack or inadequacy of
the receiver’s bond in the order. Consequently, Fite and Woods have not properly
preserved this complaint for appellate review. Id. 
Receiver’s Bond 
          Finally, Fite and Woods argue that that the $500 bond posted by Raymond as
the receiver is impermissibly low and is insufficient “to protect a going concern such
as BEPA.” However, this is exactly the same amount that they agreed was sufficient
under the original receivership and they presented no facts before the trial court as to
what circumstances had changed warranting a greater bond. Accordingly, we hold
that the trial court did not abuse its discretion in setting the receiver’s bond amount. 
  
 
CONCLUSION
          We affirm the order of the trial court.
                                                                        George C. Hanks, Jr.
                                                                        Justice
 
Panel consists of Justices Taft, Hanks, and Higley.