# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00346-CV

**Sarah W. Elliott, as Joint Successor Trustee of the Glen L. Weatherman and Mildred S. Weatherman Revocable Living Trust; and Margaret W. Clem, as Joint Successor Trustee of the Glen L. Weatherman and Mildred S. Weatherman Revocable Living Trust, Appellants**

**v.**

**Jerald G. Weatherman, Individually and Jerald G. Weatherman, as Joint Successor Trustee of the Glen L. Weatherman and Mildred S. Weatherman Revocable Living Trust, Appellee**

**FROM THE DISTRICT COURT OF MCCULLOCH COUNTY, 198TH JUDICIAL DISTRICT NO. 2012055, HONORABLE MELVIN REX EMERSON, JR., JUDGE PRESIDING**

## O P I N I O N

This is an interlocutory appeal from a trial court order concerning the Glen L. Weatherman and Mildred S. Weatherman Revocable Living Trust. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(1) (West Supp. 2012) (providing for interlocutory review of order appointing receiver). Sarah W. Elliot and Margaret W. Clem, successor cotrustees, contend that the trial court abused its discretion by appointing a receiver over certain trust assets. We will reverse the order of the trial court.

## BACKGROUND

In 1997, Glen L. Weatherman and Mildred Weatherman created a revocable living trust and named themselves as cotrustees. The Weathermans later amended the trust, designating

their three adult children as joint successor cotrustees upon their "death, resignation, or incapacity." The trust also provides that upon the death of the Weathermans, the trustees shall distribute the trust assets as directed in the trust.[1] When the Weathermans passed away in 2010 the trust assets valued approximately 1.2 million dollars. Other than a few household goods and personal effects, the largest trust assets consist of two parcels of real property located in McCulloch County and two bank accounts.

On March 9, 2012, the Weathermans' daughters, Elliot and Clem, sued their brother and cotrustee, Jerald G. Weatherman. Elliot and Clem asserted that Weatherman had violated the terms of the trust, breached his fiduciary duties as a trustee, and converted trust property. Elliot and Clem sought declaratory relief, actual damages, exemplary damages, and attorney's fees. In addition, Elliot and Clem asked the court to issue a temporary injunction enjoining Weatherman from exercising independent, unauthorized control over any of the trust assets and from interfering with the marketing and sale of the real property. Elliot and Clem also requested that the court permit Elliot and Clem to make decisions on behalf of the trust during the pendency of the suit without having to first obtain Weatherman's consent. In response, Weatherman filed a countersuit for declaratory relief and for an accounting of trust assets. Weatherman also requested that the court issue a temporary injunction enjoining Elliot and Clem from exercising control over the trust assets.

On April 23, 2012, the trial court held an evidentiary hearing to determine whether it should issue any of the requested temporary injunctions.[2] At the hearing, Elliot and Clem presented

---

[1] According to Elliot and Clem, the trust names the three Weatherman children as the trust beneficiaries and, because there are no outstanding debts, requires them as cotrustees to distribute the assets equally between themselves.

[2] During the same hearing, the trial court also considered Elliot and Clem's motion to expunge a lis pendens filed by Weatherman. However, the trial court's ruling on that motion is not currently before this Court.

testimony that Weatherman had refused to cooperate in the administration of the trust and had prevented performance of the trust's function, specifically preventing the sale of trust property. Conversely, Weatherman testified that Elliot and Clem had made decisions on behalf of the trust and withdrawn money from the trust bank account without his consent, including money for the payment of their legal fees.

At the conclusion of the evidence, the parties orally presented their closing arguments to the trial court. First, Elliot and Clem argued that they had sufficiently shown that the ability of the parties "to work unanimously has not been practical" and requested that they be allowed, by majority rule, to make decisions necessary to maintain the trust property during the pendency of the suit, citing section 113.085 of the Texas Trust Code.[3] Elliot and Clem also argued that the court

---

[3] Section 113.085 of the Texas Trust Code provides:

(a)     Cotrustees may act by majority decision.
(b)     If a vacancy occurs in a cotrusteeship, the remaining cotrustees may act for the trust.
(c)     A cotrustee shall participate in the performance of a trustee's function unless the cotrustee:
    (1)     is unavailable to perform the function because of absence, illness, suspension under this code or other law, disqualification, if any, under this code, disqualification under other law, or other temporary incapacity; or
    (2)     has delegated the performance of the function to another trustee in accordance with the terms of the trust or applicable law, has communicated the delegation to all other cotrustees, and has filed the delegation in the records of the trust.
(d)     If a cotrustee is unavailable to participate in the performance of a trustee's function for a reason described by Subsection (c)(1) and prompt action is necessary to achieve the efficient administration or purposes of the trust or to avoid injury to the trust property or a beneficiary, the remaining cotrustee or a majority of the remaining cotrustees may act for the trust.
(e)     A trustee may delegate to a cotrustee the performance of a trustee's function unless the settlor specifically directs that the function be performed jointly.

could, alternatively, issue an order that would allow for a variety of simple maintenance and ongoing management issues to be addressed without prior approval of the court.

In response, Weatherman argued that the majority rule proposed by Elliot and Clem was unworkable and that the trial court had two other options. First, Weatherman suggested that the court could order that the trustors be allowed to withdraw up to a specified amount of money each month as necessary to maintain trust assets without court approval. Alternatively, Weatherman suggested that the trial court could appoint "a receiver or some kind of an independent Trustee to get us to the finish line[,] . . . [l]eave on hand whatever cash is needed, kind of reasonable expectation of getting the Trust administered, get the property sold, and do this thing with the property that's been sold."

Following the hearing, the trial court neither expressly granted nor denied the parties' requests for temporary injunctive relief. Instead, the trial court "consider[ed] the request of [Weatherman] for the appointment of a receiver" and issued a written order appointing a receiver over certain trust assets. Specifically, the order authorized the named receiver to take control of the trust bank accounts and real property, manage the sale of the real property, and "distribute the proceeds of sale in a manner set forth in future orders of [the] Court."

On May 19, 2012, the trial court issued the following findings of fact and conclusions of law:

---

Unless a cotrustee's delegation under this subsection is irrevocable, the cotrustee making the delegation may revoke the delegation.

Tex. Prop. Code Ann. § 113.085 (West Supp. 2012).

4

1.  On October 15, 1997, Glen L. Weatherman and Mildred S. Weatherman created the Glen L. Weatherman and Mildred S. Weatherman Revocable Living Trust with themselves as co-trustees.

2.  On October 25, 2008, Mr. and Mrs. Weatherman executed an amendment appointing [Weatherman], [Elliot], and [Clem] as joint successor trustees.

3.  Glen L. Weatherman died on June 9, 2010, and Mildred S. Weatherman died on December 21, 2010.

4.  The Trust does not designate any particular management technique for the joint successor trustees.

5.  Unanimous decision management has become unworkable.

6.  Two of the joint successor trustees are likely aligned.

. . .

There is a significant likelihood of future party alignment wherein exercise of co-trustees['] decisions by majority decision would not lead to a just and timely division of trust assets. It is just and equitable to appoint a neutral receiver to manage the fair distribution of trust assets in a timely and equitable manner.

In two issues on appeal, Elliot and Clem argue that the trial court abused its discretion in appointing a receiver. First, Elliot and Clem argue that the trial court abused its discretion in appointing the receiver without providing notice, without considering "less harsh remedies," and without requiring a "showing of immediate harm, or risk of material loss of trust assets." Second, Elliot and Clem argue that the trial court abused its discretion because it did not have statutory authority to appoint a receiver without a finding of breach of duty by the trustees.

## STANDARD OF REVIEW

We review a trial court's interlocutory order appointing a receiver for an abuse of discretion. *Benefield v. State*, 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.);

*Strategic Minerals Corp. v. Dickson*, 320 S.W.2d 882, 884 (Tex. Civ. App.—Austin 1959, writ ref'd n.r.e.). Under this standard, we may not substitute our judgment on factual matters for that of the trial court unless it is clear from the record that the trial court could reach only one decision. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). However, a trial court has no discretion in determining what the law is or applying the law to the facts. *Id*. at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id*. A trial court also abuses its discretion when it rules arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

Though not required, a trial court may issue findings of fact and conclusions of law in conjunction with an interlocutory order appointing a receiver. *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 884 (Tex. App.—Dallas 2003, no pet.); *Muelller v. Beamalloy, Inc.*, 994 S.W.2d 855, 858-59 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *see* Tex. R. App. P. 28.1(a). These findings and conclusions may be helpful in determining if the trial court exercised its discretion in a reasonable and principled fashion. *Mueller*, 994 S.W.2d at 859. However, they do not carry the same weight on appeal as findings made under rule 296 and are not binding on this court if unchallenged. *Id*.; *see IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997).

## ANALYSIS

A court may appoint a receiver over trust property under certain circumstances. For example, under section 64.001 of the Texas Civil Practice and Remedies Code, a court may appoint a receiver in an action between "partners or others jointly owning or interested in any property or fund" or "in any case in which a receiver may be appointed under the rules of equity." Tex. Civ.

6

Prac. & Rem. Code Ann. § 64.001(a)(3), (b) (West 2008). In addition, the Texas Trust Code authorizes a court to "appoint a receiver to take possession of the trust property and administer the trust" in order to "remedy a breach of trust that has occurred or might occur." Tex. Prop. Code Ann. § 114.008(a)(5) (West 2007).

The remedy of receivership, however, is an extraordinary remedy that must be cautiously applied. *Benefield*, 266 S.W.3d at 31; *Rowe v. Rowe*, 887 S.W.2d 191, 200 (Tex. App.—Fort Worth 1994, writ denied). Even if a specific statutory provision authorizes a receivership, a trial court should not appoint a receiver if another remedy exists at law or in equity that is adequate and complete. *Benefield*, 266 S.W.3d at 31; *see also Fortenberry v. Cavanaugh*, No. 03-04-00816-CV, WL 1412103, at *2 (Tex. App.—Austin June 16, 2005, no pet.) (mem. op.).

Moreover, the appointment of a receiver without notice is an especially drastic action and "should be exercised with extreme caution and only where great emergency or imperative necessity requires it . . . ." *Krumnow v. Krumnow*, 174 S.W.3d 820, 828 (Tex. App.—Waco 2005, pet. denied) (citing *Best Inv. Co.* v. *Whirley*, 536 S.W.2d 578, 581 (Tex. Civ. App.—Dallas 1976, no writ)). Courts have "uniformly been reluctant to grant such harsh relief." *Id.* In addition, Rule 695 of the Texas Rules of Civil Procedure specifically provides:

> Except where otherwise provided by statute, no receiver shall be appointed without notice to take charge of property which is fixed and immovable. When an application for appointment of a receiver to take possession of this type is filed, the judge or court shall set the same down for hearing and notice of such hearing shall be given to the adverse party by serving notice thereof not less than three days prior to such hearing.

7

Tex. R. Civ. P. 695. Thus, appointment of a receiver over real property without notice is expressly forbidden. *Independent Am. Sav. Ass'n v. Preston 117 Joint Venture*, 753 S.W.2d 749, 750 (Tex. App.—Dallas 1988, no writ); *Marion v. Marion*, 205 S.W.2d 426, 428-29 (Tex. Civ. App.—San Antonio 1947, no writ).

The threshold issue before this court is whether Elliot and Clem received proper notice of Weatherman's request for appointment of a receiver. In making this determination, we first examine whether Weatherman pled such relief prior to the temporary-injunction hearing in April. At the time of the hearing, Weatherman's sole pleading before the trial court was his counterpetition. In his counterpetition, Weatherman asserts that the trust had expired by its terms and seeks a declaration to this effect. Weatherman also requests that the court direct the trustees to distribute the contents of the trust. Nowhere in his pleadings does Weatherman use the term "receiver" or request that the court transfer control of trust assets to a third party. Accordingly, we conclude that Weatherman has not pled an application for receivership, and there is nothing in the record suggesting that Elliot and Clem otherwise had notice prior to the hearing that Weatherman would request such relief.

Next, we consider whether Weatherman's oral request for receivership at the conclusion of the temporary-injunction hearing constitutes sufficient notice. We recognize that there is some authority for the proposition that an oral request for receivership, such as the oral request made by Weatherman at the hearing, could be construed as a sufficient "application" to appoint a receiver. *See O & G Carriers, Inc. v. Smith Energy 1986-A P'ship*, 826 S.W.2d 703, 707 n.2 (Tex. App.—Houston [1st Dist.] 1992, no writ). However, Weatherman did not make his oral request until

8

after the close of evidence at the hearing, and the record does not show that his request for receivership was ever separately set for hearing. Thus, even assuming that Weatherman's oral request for a receivership at the temporary-injunction hearing constitutes an "application," Elliot and Clem clearly were not provided a hearing upon three-days notice, as required for a receivership over real property. *See* Tex. R. Civ. P. 695. Therefore, the trial court abused its discretion in appointing a receiver over the real property held by the trust.

Upon review of the record, we also conclude that the evidence is insufficient to justify the appointment of a receiver over the trust bank accounts without notice and the opportunity to be heard. The burden of proof to show the existence of circumstances justifying the appointment of a receiver rests on the party seeking the appointment. *Benefield*, 266 S.W.3d at 32. Here, the record fails to support a finding that other remedies, available either at law or in equity, were inadequate to temporarily maintain the status of the property and the parties' rights pending a hearing on Weatherman's request for a receiver. *See Krumnow*, 174 S.W.3d at 829 (noting that appointment without notice to adverse party should only be exercised "when the status of the property cannot be maintained and the rights of applicants protected pending a hearing by restraining order or temporary injunction or any less drastic remedy"). For instance, there is nothing in the record, including Weatherman's own pleadings, demonstrating that Weatherman's interest in the trust account could not be adequately protected by an injunction limiting the parties' ability to withdraw funds from the trust bank accounts pending a hearing. Further, there is nothing in the record suggesting that Weatherman's request for a receiver could not have been expeditiously set for a hearing. *See Whirley*, 536 S.W.3d at 583 (holding that trial court erred in appointing receiver without notice and

9

noting that "no reason is shown why the application could not have been set down for prompt hearing within a few days and the appellants given a reasonable opportunity to appear and show cause why the receivership should not be granted"). Accordingly, we cannot conclude that a compelling reason exists to justify "the harsh and stringent remedy of an appointment of a receiver without notice" and the opportunity to be heard. *See id*. The trial court abused its discretion in appointing a receiver over the trust bank accounts.[4]

Having concluded that the trial court abused its discretion in appointing a receiver over the specified property, we sustain Elliot and Clem's first issue on appeal. Therefore, we need not address Elliot and Clem's second issue regarding statutory authority. *See* Tex. R. App. P. 47.1.[5]

---

[4] In arguing that they were not provided with notice, Elliot and Clem frame their complaint in terms of the trial court's "ordering a receivership *sua sponte* or on appellee's request." While typically a receivership is considered by a trial court upon the application of a party, a trial court may on its own motion appoint a receiver when the facts justify the appointment to preserve or protect the property in litigation. *Krumnow v. Krumnow*, 174 S.W.3d 820, 828 (Tex. App.—Waco 2005, pet. denied); *B&W Cattle Co. v. First Nat'l Bank of Hereford*, 692 S.W.2d 946, 951 (Tex. App.—Amarillo 1985, no writ). In this case, the record does not show that the trial court appointed the receiver on its own motion. In fact, the trial court's order appointing the receiver expressly states that the court had considered Weatherman's request. In addition, even assuming that the trial court appointed the receiver on its own motion, nothing in the record suggests that Elliot and Clem had notice that the trial court was considering this action. *Cf. Krumnow*, 174 S.W.3d at 829 (concluding that parties had notice that court was considering receivership issue on its own motion but facts did not justify appointment of receiver to preserve trust and probate property). Thus, for the same reasons previously discussed, we would conclude that the trial court abused its discretion in appointing the receiver without notice.

[5] In this cause, Weatherman has filed a motion to enforce order appointing receiver and alternative motion to clarify duties and responsibilities of the receiver. In light of our disposition of this appeal, we dismiss as moot Weatherman's motions.

## CONCLUSION

We reverse and vacate the trial court's order appointing a receiver, and we remand the cause to the trial court for further proceedings consistent with this opinion.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton and Field

Reversed and Remanded

Filed:   February 8, 2013