

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00087-CV

**ESTATE** of Shirley L. **BENSON**, Deceased

From the Probate Court No. 2, Bexar County, Texas
Trial Court Nos. 155,572 & 155,572-A
Honorable Tom Rickhoff, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Karen Angelini, Justice
              Marialyn Barnard, Justice
              Rebeca C. Martinez, Justice

Delivered and Filed: September 9, 2015

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

This is an accelerated, interlocutory appeal from a probate court order regarding the Shirley L. Benson Testamentary Trust ("the Trust"). Appellant Thomas Milton Benson Jr., as trustee of the Trust, contends the probate court abused its discretion by entering a temporary injunction enjoining him from acting as trustee and appointing temporary co-receivers over the Trust assets. We reverse the portion of the probate court's order granting the temporary injunction and render judgment dissolving the temporary injunction. However, we affirm the portion of the probate court's order appointing temporary co-receivers.

### BACKGROUND

Renee Benson is the only surviving daughter of Thomas Milton Benson Jr. and his first wife, Shirley L. Benson. Before her death, Shirley executed a will that provided for the creation

of the Trust upon her death. When she died, the Trust was formed and received the residue of her estate. In the will, Shirley named Tom trustee and income beneficiary of the Trust and the Bensons' three children, Robert, Renee, and Jeanne Marie, remainder beneficiaries of the Trust. The Trust provided that upon Tom's death, its assets would be divided equally among the three children. During Tom's lifetime, however, the Trust was to provide for the distribution of income to Robert, Renee, and Jeanne Marie to the extent necessary for their health, support, and maintenance.

After Shirley's will was probated, Tom began serving as trustee. Over the next thirty-five years, Tom managed the assets of the Trust, utilizing the assistance of accountants, bookkeepers, and business advisors. Currently, the Trust consists of a variety of significant assets, including a non-controlling interest in Bensco, Inc.,[1] a ninety-seven percent interest in Lone Star Capital Bank, a ninety-nine percent interest in Uptown Blanco, Ltd.,[2] real estate interests in Texas and Louisiana, and several million dollars in cash.

According to Renee, in 2014, her father's behavior toward her and her two adult children, Rita and Ryan, abruptly changed. At that time, Renee and her children were heavily involved in running a number of Tom's enterprises, including the New Orleans Saints, the New Orleans Pelicans, Lone Star Capital Bank, and five car dealerships. During an evidentiary hearing, Renee testified she and her father always had a very close relationship, and she and her children took part in many of her father's business ventures. However, according to Renee, this dynamic began to change over the past year. Renee testified that in December of 2014, her father asked her to visit him in New Orleans, and when she went to his house, she found him "out of it." According to

---

[1] Bensco, Inc. is a Texas corporation whose wholly-owned subsidiaries include three Texas and two Louisiana automobile dealerships.
[2] Uptown Blanco, Ltd. is a real estate business focused on purchasing, renovating, and renting buildings in Blanco, Texas.

Renee, Tom was taking a lot of medications, but did not know what they were. Renee testified that since the December 2014 visit, she has not been permitted to visit or speak to her father.

Renee also testified that a few days after Christmas 2014, she received a letter from her father. The letter was addressed to her and her children. In the letter, her father stated he has been unhappy with their behavior since his marriage to his third wife Gayle in 2004. As a result, he no longer wanted any contact with them. Renee testified that in the letter, her father stated she and her children were banned from entering any of his facilities, including the facilities or games for the New Orleans Saints and New Orleans Pelicans, the Benson Towers, and the automobile dealerships. The letter also stated none of them had any right to give directions or orders to any of his business personnel. Confused, Renee testified she tried to contact her father by phone and in person over the next couple of weeks; however, Tom refused to speak to her.

The evidence showed that around that same time, Tom was exhibiting some troubling behavior toward close business associates, specifically Tom Roddy and Bill McCandless, both longtime bankers in San Antonio who had worked with Tom for over thirty years. According to Mr. Roddy, Tom attempted to fire him, Mr. McCandless, Renee, Rita, and Ryan from the Lone Star Capital Bank's Board of Directors. Mr. Roddy also testified Tom abruptly withdrew $25 million dollars—$4.76 million of which belonged to the Trust—from Lone Star Capital Bank and deposited the funds with Frost National Bank. The total withdrawal constituted approximately twelve percent of the bank's total deposits, placing the bank in an urgent situation. Lone Star Bank's CEO and President, Danny Buck, testified Tom did not provide him with any warning of the withdrawal, and as a result, the bank had to sell some securities and obtain a short-term loan. Mr. Buck stated such behavior was unprecedented for an owner of a bank. At the same time, however, Mr. Roddy also testified Tom's actions were not illegal and did not impact the bank's book value.

Lastly, Tom secretly relocated the office of the Trust bookkeeper, Mary Polensky. Ms. Polensky testified she usually used an office at Renee's company, Renson Enterprises, Inc., but Tom asked her to move out without telling anyone where she was going. Ms. Polensky complied and did not return any of Renee's or Mr. Roddy's phone calls for more than two months. Not until the evidentiary hearing did Renee learn that Ms. Polensky moved her office from Renson Enterprises, Inc. to Tom's condominium in San Antonio.

As a result of Tom's behavior, Renee filed an original petition in the Bexar County probate court, alleging Tom was not fulfilling his fiduciary duties as trustee and seeking to remove Tom as trustee of the Trust. In her petition, Renee pointed out that in addition to other unusual behaviors, Tom failed to pay a number of fees, including property insurance premiums and taxes on several real estate assets owned by the Trust. Renee asked the probate court to issue a temporary restraining order to prevent her father from moving trust assets as well as a temporary injunction enjoining Tom from taking any action related to the Trust. Renee also asked the probate court to appoint a temporary receiver to manage the Trust assets during the course of the removal proceedings.

That same day, the probate court granted the temporary restraining order against Tom and ordered a hearing on Renee's request for the temporary injunction. Shortly thereafter, the probate court held a two-day evidentiary hearing to determine whether it should grant the requested temporary injunction. As indicated above, Renee presented testimony regarding Tom's behavior toward her and his other business associates as well as Tom's recent actions with regard to the Trust. Conversely, Tom presented evidence indicating he had a strained relationship with Renee and her children and he no longer wanted any contact with them. Tom, however, did not testify at the hearing.

At the conclusion of the hearing, the probate court neither expressly granted nor denied Renee's request for temporary injunctive relief; rather, the probate court rendered a written order appointing temporary co-receivers, Phil Hardberger and Arthur Bayern, authorizing them to take control of both the Estate of Shirley L. Benson and the Trust (collectively "the Receivership Estate"). Specifically, the order authorized the co-receivers to identify and take possession of the Receivership Estate, manage the business and financial affairs of the Receivership Estate, and essentially perform any action necessary to preserve its value. An addendum outlining the probate court's reasons for appointing co-receivers was attached to the order. The addendum summarized Tom's actions relating to Renee and the Trust. Tom appealed the probate court's order.

Several days later, the co-receivers asked the probate court to expand their powers to allow them to reach additional assets. Without specific notice to Tom, the probate court amended its original order, granting the temporary co-receivers the power to determine the extent to which the Receivership Estate owns assets with third parties. The probate court also granted the temporary injunction. Thereafter, Tom filed an amended notice of appeal, indicating the probate court's amended order failed to comply with Texas Rules of Civil Procedure 683 and 684. Tom also sent a letter to the probate court, requesting an opportunity to be heard before any additional action was taken. The probate court denied Tom's request and rendered a second amended order, itemizing the actions Tom was commanded to desist and refrain from and setting the matter for trial. Tom filed another amended notice of appeal.

## ANALYSIS

In three issues on appeal, Tom argues the probate court abused its discretion in granting a temporary injunction in favor of Renee and appointing co-receivers. Tom first argues there was no evidence he committed a material breach of trust to support the probate court's second amended order granting a temporary injunction and appointing co-receivers. In addition, Tom argues neither

the temporary injunction nor appointment of co-receivers "can be defended under the requirements of equity." Specifically, Tom argues there is no evidence to show Renee suffered serious injury or irreparable harm or that less invasive equitable remedies would be inadequate. Finally, Tom contends the probate court's second amended order is facially flawed and void. According to Tom, the probate court rendered the order without notice of a hearing to him and the order does not comply with the mandatory requirements set out in Texas Rule of Civil Procedure 683.

### *Standard of Review*

We review a trial court's interlocutory order appointing a receiver or granting a temporary injunction under an abuse of discretion standard. *Elliot v. Weatherman*, 396 S.W.3d 224, 228 (Tex. App.—Austin 2013, no pet.); *Benefield v. State*, 266 S.W.3d 25, 30–31 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273, 280 (Tex. App.—San Antonio 2003, no pet.). A trial court abuses its discretion when it acts arbitrarily, unreasonably, without regard to any guiding rules and principles of law, or misapplies the law to the established facts. *Elliot*, 396 S.W.3d at 228; *Orix Capital Mkts., LLC v. La Villita Motor Inns., J.V.*, 329 S.W.3d 30, 44 (Tex. App.—San Antonio 2010, pet. denied); *Benefield*, 266, S.W.3d at 31. Conversely, a trial court does not abuse its discretion so long as some evidence in the record reasonably supports the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002); *Khaledi*, 126 S.W.3d at 280. When conducting our analysis, we may not substitute our judgment for that of the trial court unless it is clear from the record that the trial court could reach only one decision. *Elliot*, 396 S.W.3d at 228 (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992)).

### *Temporary Injunction*

As an initial matter, because Tom's last argument is dispositive with regard to the granting of the temporary injunction, we address it first. As stated above, Tom contends the temporary

injunction order is void because it does not comply with Texas Rule of Civil Procedure 683. According to Tom, the order is conclusory because it does not "articulate the reasons" Renee will suffer irreparable injury if the injunction is not granted. We agree.

Texas Rule of Civil Procedure 683 states that every order granting an injunction must "set forth the reasons for its issuance" and "be specific in its terms." TEX. R. CIV. P. 683. The Texas Supreme Court has interpreted this rule to require "the order set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons why the court believes the applicant's probable right will be endangered if the writ does not issue." *Transp. Co. v. Robertson Transps., Inc.*, 152 Tex. 551, 556, 261 S.W.2d 549, 553 (1953); *Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 56 (Tex. App.—San Antonio 2010, no pet.); *see also State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex. 1971) ("[I]t is necessary to give the reasons why injury will be suffered if the interlocutory relief is not ordered"). When setting forth the reasons injury will occur, the trial court must set forth specific reasons, not merely conclusory statements. *Kotz*, 319 S.W.3d at 56; *see also* TEX. R. CIV. P. 683 (requiring court's order granting injunction to "be specific in terms"). Simply stating a party "will suffer irreparable harm" does not satisfy Rule 683's specificity requirement. *AutoNation, Inc. v. Hatfield*, 186 S.W.3d 576, 582 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see also Indep. Capital Mgmt., LLC v. Collins*, 261 S.W.3d 792, 795–96 (Tex. App.—Dallas 2008, no pet.); *Univ. Interscholastic League v. Torres*, 616 S.W.2d 355, 358 (Tex. Civ. App.—San Antonio 1981, no writ). This procedural requirement for specificity is mandatory and must be strictly followed; an order granting a temporary injunction that fails to strictly comply with the specificity requirement may be declared void and dissolved. *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (per curiam); *Kotz*, 319 S.W.3d at 56; *Indep. Capital Mgmt.*, 261 S.W.3d at 795. A trial court is considered to have abused

its discretion if it issues a temporary injunction order that fails to satisfy the specificity requirement of Rule 683. *Indep. Capital Mgmt.*, 261 S.W.3d at 795.

To determine whether an order is sufficiently specific about the injury to be suffered by the applicant, we look only to the order itself. *See AutoNation, Inc.*, 186 S.W.3d at 582. Here, the portion of the probate court's second amended order granting the temporary injunction does not specify the reasons the writ is necessary to prevent an injury to Renee, the applicant. Instead, the order simply states, "Petitioner [Renee] will have no adequate remedy at law, and the Petitioner will be irreparably harmed." This statement merely sets out the elements necessary for injunctive relief without identifying how or why Renee will be irreparably harmed. Thus, it is conclusory. *See Indep. Capital Mgmt.*, 261 S.W.3d 795–96; *AutoNation, Inc.*, 186 S.W.3d at 582; *Interscholastic League*, 616 S.W.2d at 358; *see also Arkoma Basin Exploration Co. v. FMF Associates 1990 A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008) (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based.").

Although the portion of the order granting the injunction states the probate court's reasons for granting injunctive relief are set forth in the attached addendum, the addendum sets out the actions Tom has taken and the state of his health. It does not specify, as it must, what injury Renee will suffer in the absence of an injunction. *See Robertson Transps.*, 261 S.W.3d at 553 (requiring order to set forth why it believes *applicant's* probable right will be injured); *Kotz*, 319 S.W.3d at 56. Here, the addendum contains several conclusory statements regarding injuries allegedly suffered by the Trust and depositors of Lone Star Capital Bank. For example, on the first page, the addendum states, "Significant actions by the trustee and his few known statements motivating those acts negatively impacted the trust and were of particular concern." It later states, "Both sides presented evidence that this action [transferring funds from Lone Star Capital Bank to Frost Bank]

impaired the banks [sic] function and could cause other depositors concern." However, neither of these statements identify how *Renee*, *the applicant*, will suffer harm, nor do they set forth reasons explaining why injury will result to *Renee* in the absence of an injunction. *See Robertson Transps.*, 261 S.W.3d at 553; *Kotz*, 319 S.W.3d at 56.

The only part of the addendum that can be construed as setting forth any reason injury will be suffered in the absence of an injunction states:

> The actions of the trustee will likely damage the trustee's local brand significantly over this next year if not reversed soon and if the major interested parties are not reassured that the previous status quo obtain accompanied by stability and calmness [sic].

This language, however, does not comply with the strict specificity requirements of Rule 683 as it fails to identify what injury will occur to *Renee* or how *Renee* will suffer an injury as a result if the injunction is not granted. *See Robertson Transps.*, 261 S.W.3d at 553; *Kotz*, 319 S.W.3d at 56–57.

Accordingly, after reviewing the order and the addendum, we conclude the probate court failed to identify what harm will occur to Renee or how she will suffer any injury in the absence of an injunction. *See IAC, Ltd.*, 160 S.W.3d at 201 ("The trial court … must give the reasons why injury will be suffered if the interlocutory relief is not ordered."). We therefore hold the portion of the probate court's second amended order granting the temporary injunction does not comply with the requirements of Rule 683. *See* TEX. R. CIV. P. 683; *Kotz*, 319 S.W.3d at 56. Thus, we hold the portion of the order granting the temporary injunction order is void and the temporary injunction must be dissolved. *See Quest*, 24 S.W.3d at 337; *Kotz*, 319 S.W.3d at 56.

### *Appointment of Receiver*

We now turn to Tom's challenges regarding the probate court's appointment of co-receivers. Whether authorized by statute or by equity, the appointment of a receiver is considered

a harsh, drastic, and extraordinary remedy that must be used cautiously. *Benefield*, 266 S.W.3d at 31; *Elliot*, 396 S.W.3d at 228–29. Only in certain circumstances may a trial court appoint a receiver over trust property. *Elliot*, 396 S.W.3d at 228. Section 114.008(a)(5) of the Texas Property Code authorizes a court to "appoint a receiver to take possession of the trust property and administer the trust" if the court finds that "a breach of trust has occurred or might occur." TEX. PROP. CODE § 114.008(a)(5) (West 2014); *see also Elliot*, 396 S.W.3d at 228. The party seeking the appointment of a receiver bears the burden of proof to show the existence of circumstances justifying the appointment of a receiver. *Benefield*, 266 S.W.3d at 31; *Elliot*, 396 S.W.3d at 228–29.

In his first issue, Tom contends the probate court abused its discretion in appointing co-receivers over the Trust assets because there was no evidence he committed a breach of trust or that a breach of trust might occur so as to support the appointment of co-receivers. In response, Renee argues she produced evidence establishing Tom committed a breach of trust. According to Renee, Tom breached his fiduciary duties as trustee when he: (1) severed all contact with Renee and her children; (2) abruptly withdrew $25 million dollars from Lone Star Capital Bank; (3) attempted to fire several of the board members of Lone Star Capital Bank; and (4) secretly moved the Trust's bookkeeper from Renee's company's office to his private condominium.

A breach of trust occurs when a trustee breaches his statutory or common law fiduciary duty. *See* TEX. PROP. CODE § 114.001(b). It is a well-established principle that a trustee is a fiduciary that is held to a high standard of care when dealing with trust property. *See generally* TEX. PROP. CODE §§ 113.051-115.059; *Estate of Boylan*, No. 01-14-000170-CV, 2015 WL 598531, at*4 (Tex. App.—Fort Worth March 12, 2015, no pet.) (mem. op.). As a fiduciary, a trustee owes an unwavering duty of good faith, fair dealing, loyalty, and fidelity to his or her beneficiaries when managing the affairs of a trust and its corpus. *See Boylan*, 2014 WL 598531,

at \*4.  Moreover, a trustee owes a duty of full disclosure of all material facts known to him or her which might affect the rights of beneficiaries.  *Trostle v. Trostle*, 77 S.W.3d 908, 914 (Tex. App. 2002—Amarillo, no pet.) (citing *Huie v. DeSahzo*, 922 S.W.2d 920, 923–24 (Tex. 1996)).  This fiduciary duty requires that a trustee exercise care and judgment that a person of ordinary prudence, discretion and intelligence would exercise when managing his or her own affairs.  *Boylan*, 2014 WL 598531, at \*4.  Furthermore, the existence of strained relations between parties does not minimize the fiduciary's duty of full and complete disclosure.  *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984).  "A trustee can exercise his fiduciary duty in such a negligent manner that his lack of diligence will result in a breach of his fiduciary duty."  *Jewett v. Capital Nat. Bank of Austin*, 618 S.W.2d 109, 112 (Tex. Civ. App.—Waco 1981, writ ref'd n.r.e.).  Accordingly, we must determine whether Tom's actions constitute a breach of his fiduciary duty, and therefore, whether a breach of trust occurred or might occur without the appointment of co-receivers.

To begin, the probate court found there was evidence of a breach of trust to support its decision to appoint co-receivers.  In the addendum to the second amended order, the probate court stated, "It appears the respondent trustee's defense is that his actions do not constitute a trust breach.  The court disagrees."  As noted above, Renee produced evidence that Tom severed communication with her and her children, who were the beneficiaries of the Trust, and he began moving trust assets and taking actions that could affect the value of the Trust assets.  Without explanation, Tom transferred $4.76 million dollars of Trust funds from Lone Star Capital Bank — in which the Trust has a ninety-seven percent interest — to Frost National Bank.  This transfer was part of a larger transfer of $25 million.  According to Lone Star Capital Bank, although the transfer had no effect on the bank's book value, it could have potentially impacted the bank's market value in a negative way.  Renee also produced evidence that Tom did not provide bank personnel with any warning of the withdrawal, and as a result, the bank had to sell some securities and obtain a

short-term loan. She also produced evidence that because of the transfer's potential to negatively impact the market value of the bank, a transfer of such magnitude was uncharacteristic of bank owners.

The record also contains evidence that Tom attempted to fire several Lone Star Capital Bank board members. Finally, Renee produced evidence that Tom secretly moved the bookkeeper of the Trust and told the bookkeeper not to talk to Renee or her children or tell anyone of her movement. The evidence showed Renee attempted to contact the bookkeeper several times but was unsuccessful.

These actions constitute some evidence from which the probate court could have determined, in its discretion, that Tom committed a breach of trust. As trustee, Tom not only had a duty to exercise the care and judgment that he would exercise when managing his own affairs, but also a duty to fully disclose any material facts that *might* affect Renee and her children's rights. *See Boylan*, 2014 WL 598531, at *4; *Trostle*, 77 S.W.3d 908 at 914. Tom's abrupt severance of all communications with the Trust beneficiaries, his undisclosed transfer of funds that could have negatively impacted the market value of Lone Star Capital Bank—a Trust asset, his unexplained attempts to fire members of the Bank's board—including long-time business associates, and his concealment of the Trust bookkeeper from the Trust beneficiaries constitute some evidence of actions a person of ordinary prudence and discretion would not take when managing his own affairs. *See Boylan*, 2014 WL 598531, at *4. Tom's actions also constitute evidence of a failure to disclose material facts that might have affected the rights of the beneficiaries. Considering all of the evidence, we hold there was some evidence to establish Tom breached his fiduciary duty and therefore a breach of trust occurred. *See id.*; *see also* TEX. PROP. CODE § 114.001(a)(5). As a result, we hold the probate court did not abuse its discretion when it ordered the appointment of

co-receivers as authorized by section 114.008(a)(5) of the Texas Property Code. *See* TEX. PROP. CODE § 114.001(a)(5).

Tom next argues that the appointment of co-receivers cannot be defended under the requirements of equity. Specifically, Tom contends the evidence did not establish that Renee suffered irreparable harm or that less invasive equitable remedies would be inadequate. However, Tom's complaint fails because Renee was not required to satisfy the requirements of equity, i.e., she was not required to establish she suffered irreparable harm or that no other adequate remedy at law existed.

As noted above, the appointment of a receiver may be authorized by statute or by equity. *See Benefield*, 266 S.W.3d at 31; *Elliot*, 396 S.W.3d at 228–29; *see also Fortenberry v. Cavanaugh*, No. 03-04-00816-CV, 2005 WL 1412103, at \*2 (Tex. App.—Austin June 16, 2005, no pet.). Here, Renee requested the appointment of a receiver pursuant to section 114.008(a)(5) of the Texas Property Code, not based on equity. Section 114.008(a)(5) authorizes the appointment of a receiver to take possession of trust property and administer the trust so long as the court finds that "a breach of trust has occurred or might occur." TEX. PROP. CODE § 114.008(a)(5). Thus, Renee was not statutorily required to produce evidence showing irreparable harm or lack of another remedy. The appointment of a receiver is listed as one of many other equally available remedies that an applicant can request. *See* TEX. PROP. CODE § 114.008(a)(1)-(10). Accordingly, Renee was only required to produce evidence satisfying the statutory requirements of section 114.008(a)(5), and as discussed above, there was some evidence establishing a breach of trust occurred so as to support the probate court's discretionary decision to appoint co-receivers to oversee the Trust.

Tom, however, contends that even if a specific statutory provision authorizes the appointment of a receiver, Renee must still satisfy the rules of equity by establishing she suffered

irreparable injury and no other remedy at law exists. Tom relies on several cases which contain the following proposition: "Even if a specific statutory provision authorizes a receivership, a trial court should not appoint a receiver if another remedy exists at law or in equity that is adequate and complete." *See Elliot*, 396 S.W.3d at 228–29; *see also Benefield*, 266 S.W.3d at 31; *Fortenberry v. Cavanaugh*, 2005 WL 1412103, at *2. In those cases, the statute authorizing the appointment of a receiver *required* the trial court to make an equitable determination that all other remedies were inadequate. *See Benefield*, 266 S.W.3d at 31–32 (relying on Texas Nonprofit Corporation Act, which states receiver may be appointed only if all other remedies are determined by court to be inadequate); *Fortenberry v. Cavanaugh*, 2005 WL 1412103, at *2–*3 (same). In fact, both *Benefield* and *Elliot* rely on *Rowe v. Rowe*, 887 S.W.2d 191, 200–01 (Tex. App.—Fort Worth 1994, writ denied), wherein the petitioner sought the appointment of a receiver under article 7.05(A) of the Business Corporation Act, which specifically required a party seeking the appointment of a receiver to convince the trial court that "all other remedies available either at law or in equity are inadequate." Moreover, in *Elliot*, the statement relied upon by Tom was dicta. In *Elliot*, the court held the trial court abused its discretion in appointing a receiver because the parties did not receive proper notice of the other party's request for a receiver and the evidence did not support the appointment of a receiver without notice—the discussion of proof of another remedy was not the basis of the court's decision. *See Elliot*, 396 S.W.3d at 228–29 (pointing out that evidence did not support finding that other remedies were inadequate—finding required to justify appointment of receiver without notice). Accordingly, these cases are neither instructive nor applicable as section 114.008(a)(5), the statutory provision relied upon by Renee, does not require an applicant for a receiver to prove any elements of equity. Thus, we overrule Tom's second issue.

Finally, Tom contends the probate court's appointment of co-receivers was an abuse of discretion because he was not provided with notice that Renee was seeking the appointment of a

receiver. When, as is the case here, a party requests the appointment of a receiver over trust assets, which include real property interests, Rule 695 of the Texas Rules of Civil Procedure specifically provides, in relevant part:

> Except where otherwise provided by statute, no receiver shall be appointed without notice to take charge of property which is fixed and immovable. When an application for appointment of a receiver to take possession of property of this type is filed, the judge or court shall set the same down for hearing and notice of such hearing shall be given to the adverse party by serving notice thereof not less than three days prior to such hearing. . . .

TEX. R. CIV. P. 695; *see also Elliot*, 396 S.W.3d at 228–29; *Indep. Am. Sav. Ass'n v. Preston 117 Joint Venture*, 753 S.W.2d 749, 750 (Tex. App.—Dallas 1988, no writ.). To determine whether Tom received proper notice of Renee's request for the appointment of a receiver, we first examine Renee's pleadings. *See Elliot*, 396 S.W.3d at 229. Here, Renee filed an Original Petition for Removal of Trustee and Application for Temporary Injunctive Relief, wherein she specifically requested imposition of a temporary restraining order, imposition of a temporary injunction, and the appointment of a temporary receiver pursuant to section 114.008(a)(5) of the Texas Property Code. Renee's request for the appointment of a receiver appears twice in her petition: (1) in section nine, entitled "Application to Appoint Temporary Conservator for Trust," wherein Renee states, "Petitioner requests that pending final trial the Court order the appointment of a temporary receiver . . . ;" and (2) in section thirteen, entitled "Requests for Relief," wherein Renee lists the appointment of a receiver as a type of relief sought.

The day after Renee filed her original petition, the probate court rendered the requested temporary restraining order, setting a hearing on Renee's other requests. Approximately two weeks later, the probate court held a two-day evidentiary hearing, of which all the parties had notice and all the parties appeared and presented evidence regarding Tom's actions. At the conclusion of the hearing, the probate court orally appointed co-receivers to take possession of the

trust property and manage it. That same day, the probate court rendered a written order appointing co-receivers, and the order was subsequently amended twice, albeit without additional hearings.

Based on the foregoing, we conclude the record establishes Tom had notice of the relief requested by Renee, i.e., that she sought the appointment of a receiver. Her petition—the sole pleading before the probate court prior to the evidentiary hearing—specifically notified Tom of her request for appointment of a receiver.

Tom relies on *Elliot* to support his position that he did not receive notice that Renee was seeking the appointment of a receiver. In *Elliot*, the court held the trial court abused its discretion in appointing a receiver over real property held by a trust because the parties did not receive the notice required by Rule 695. *See Elliot*, 396 S.W.3d at 229. However, we hold *Elliot* is distinguishable. In *Elliot*, the court reviewed the applicant's pleadings and pointed out, "Nowhere in his pleadings does Weatherman use the term 'receiver' or request that the court transfer control of trust assets to a third party." *Elliot*, 396 S.W.3d at 228. Thus, unlike Renee, Weatherman did not plead for the appointment of a receiver. *See id.*

Tom also argues the language used to set the evidentiary hearing in this case did not mention the term "receivership," and therefore, he did not receive notice of Renee's request for a receiver. We again disagree. As detailed above, the only pleading on file prior to the evidentiary hearing was Renee's petition, wherein she specifically requested injunctive relief *and the appointment of receiver*. *See O&G Carriers, Inc. v. Smith Energy 1986-A Partnership*, 826 S.W.2d 703, 707 (Tex. App.—Houston [1st Dist.] 1992, no writ) (stating use of phrase "escrow agent" instead of "receiver" was not of substantial significance to support no notice argument).

Finally, Tom argues he did not receive notice or an opportunity to be heard when the probate court amended its order appointing co-receivers on two different occasions without a hearing. However, Tom does not cite any authority—nor have we found any—for the proposition

that a party must be notified and provided with an opportunity to be heard before a court amends an order appointing a receiver. Rule 29.5 of the Texas Rules of Appellate Procedure authorizes a trial court to modify or amend an original order so long as those modifications do not interfere with or impair the appellate court's jurisdiction. TEX. R. APP. P. 29.5. Nowhere does the rule require additional notice or an additional hearing. Accordingly, we hold the probate court was authorized to amend the original order without providing the parties with additional notice or a second or third hearing. *See id.* The record establishes the original order was amended to allow the co-receivers access to certain trust property; the amended order also expanded the temporary restraining order into a temporary injunction, enjoining Tom from acting as trustee of the Trust, which as discussed above, did not comply with Rule 683.

Accordingly, we overrule Tom's notice issue and hold the evidence in the record establishes Tom received the required notice prior to the two-day evidentiary hearing and subsequent rendition of orders. *See* TEX. R. CIV. P. 695.

## CONCLUSION

Based on the forgoing, we reverse the portion of the probate court's order granting temporary injunctive relief and render judgment dissolving the temporary injunction. However, we affirm the portion of the probate court's order appointing temporary co-receivers.

Marialyn Barnard, Justice